Michael SARNO, Plaintiff–Appellant,

v.

DOUGLAS ELLIMAN–GIBBONS & IVES, INC., Defendant–Appellee,

Insignia Financial Group, Inc., Defendant.

No. 98–9295.

United States Court of Appeals, Second Circuit.

Argued May 28, 1999.

Decided July 09, 1999.

156

Brian K. Saltz, Farmingdale, New York, for Plaintiff–Appellant.

Bettina B. Plevan, New York, New York (Tracey I. Levy, Proskauer Rose, New York, New York, on the brief), for Defendant-Appellee.

Before: KEARSE, WALKER, and POOLER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Michael Sarno appeals from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, *Judge,* dismissing his complaint alleging that defendant Douglas Elliman–Gibbons & Ives, Inc. ("DEGI"), discriminated and retaliated against him in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (1994), and alleging that DEGI terminated his employment without giving him notice of the amount of leave to which he was entitled under the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.* (1994). The district court granted summary judgment in favor of DEGI, dismissing the ADA claims on the ground that Sarno had not adduced evidence of a disability within the scope of the ADA, and dismissing the FMLA claim on the ground that Sarno had received every substantive benefit to which he was entitled under that Act. On appeal, Sarno pursues his contention that the termination of his employment violated his rights under the FMLA, and he contends that there were genuine issues of fact to be tried as to his ADA retaliation claim. Finding no basis for reversal, we affirm.

## I. BACKGROUND

An employer covered by the FMLA is generally required to grant an "eligible employee" up to 12 weeks leave during any 12–month period for, *inter alia,* "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An "eligible employee" is defined as one who, *inter alia,* has been employed for at least 12 months by the employer from whom leave is sought. *See id.* § 2611(2)(A). At the times pertinent to this case, DEGI was an employer covered by the FMLA; on or about April 18, 1995, Sarno, having been hired by DEGI one year earlier, became an eligible employee.

The present action centers principally on DEGI's termination of Sarno's employment in August 1995, following the 12–week leave of absence to which he was entitled under the FMLA. Except to the extent indicated below, the pertinent facts are not in dispute, having been asserted in DEGI's Statement Pursuant to Local Rule 56.1 ("DEGI Rule 56.1 Statement") of the material facts as to which DEGI contended there was no genuine issue to be tried, and not having been disputed by Sarno in accordance with that Rule.

### A. Sarno's Employment with DEGI

Beginning in mid-April 1994, Sarno was employed by DEGI as a payroll administrator. In March 1995, Sarno fell at work and aggravated a pre-existing hernia injury. In early May 1995, he underwent a CAT scan and was diagnosed as having a sprained rectus muscle. On May 10, Sarno telephoned his DEGI supervisor, Judy Caplan, from home and informed her that he "was going out on workmen's comp." (DEGI Rule 56.1 Statement ¶ 21.) By letter dated May 12, 1995, DEGI informed Sarno that his absence would be treated as unpaid leave under the FMLA for that calendar year. Sarno received and read the letter shortly thereafter.

During that leave of absence, Sarno contacted Caplan "every couple of weeks"; at no time during those conversations did he inform her of a specific date on which he would be able to return to work. (DEGI Rule 56.1 Statement ¶ 26.) In one such conversation near the beginning of July,

Sarno informed Caplan that he did not know when he would be able to return to work.

On August 3, 1995, the day on which Sarno's 12–week FMLA leave was to end, DEGI Human Resources Director Joyce Sponholz telephoned Sarno to inquire when he would return to work. In a telephone conversation on August 3 or 4, Sarno advised Sponholz that he was still disabled. On August 4, Sponholz informed Sarno that his 12–week FMLA leave had expired and that since DEGI needed to fill his position and was not required to grant him further leave, DEGI was terminating his employment. It is undisputed that Sarno was in fact unable to perform the essential functions of his DEGI position between May 10, 1995, and October 2, 1995.

### B. Post–Termination Events

Following the termination of his employment with DEGI, Sarno sought reinstatement but was not reinstated. In January 1996, he filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that DEGI's refusal to reinstate him constituted discrimination based on disability, in violation of the Americans with Disabilities Act.

Sarno also sought employment elsewhere, including with a company called Anthony Concrete Supply ("Anthony Concrete"). In June 1996, a representative of that company telephoned Sponholz requesting a reference for Sarno. Sponholz informed the caller that DEGI did not give references by telephone, and that in any event DEGI would verify only dates of employment, position, and last salary. Sarno was not offered a position by Anthony Concrete.

### C. The Present Action

Sarno commenced the present action in November 1996, alleging principally (1) that DEGI's termination of his employment and its failure to reinstate him violated his rights under the ADA, (2) that

DEGI's refusal to give him a positive reference when Anthony Concrete called was an act of retaliation against him for having filed an ADA charge with the EEOC, and (3) that DEGI's termination of his employment without giving him notice that he was not entitled to more than 12 weeks of leave under the FMLA violated that Act. Sarno sought, inter alia, reinstatement to his former position, backpay, and compensatory, punitive, and liquidated damages.

Following discovery, both sides moved for summary judgment. In support of its motion, DEGI submitted a Rule 56.1 Statement setting out most of the events described above, and Sarno did not dispute those assertions. DEGI also asserted that in April and May 1994, respectively, it had posted federal official notices entitled "Your Rights Under the Family and Medical Leave Act of 1993" on a bulletin board at Sarno's jobsite and on a bulletin board in the hallway leading to Sarno's office. Sarno disputed those two assertions. He also disputed DEGI's assertion that it was a DEGI corporate policy to disclose only an employee's date of hire, position held, and final salary in response to a request for an employee reference.

In an opinion published at 17 F.Supp.2d 271 (1998), the district court denied Sarno's motion for summary judgment and granted that of DEGI. The court rejected Sarno's ADA claims on the ground that Sarno had proffered no evidence of a disability within the meaning of the ADA. It rejected Sarno's FMLA claim, finding that the dispute as to whether or not DEGI had posted FMLA notices was not material because Sarno had received "the full benefits conveyed by the FMLA, namely, remaining on unpaid leave and enjoying insurance coverage for twelve weeks." 17 F.Supp.2d at 275. Thus, "even if defendant failed to provide proper information to plaintiff as to what his rights were under the FMLA, defendant did not interfere with those rights and is not subject to

the penalty of liquidated damages sought by plaintiff pursuant to [the FMLA]." *Id.*

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, Sarno pursues only his FMLA claim and his ADA retaliation claim. For the reasons that follow, we affirm the dismissal of those claims because, in each instance, Sarno failed to present evidence sufficient to make out a prima facie case.

### A. *The ADA Retaliation Claim*

■■■■ The ADA prohibits, *inter alia,* retaliation against any individual who has asserted rights under the ADA:

> No person shall discriminate against any individual because such individual ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). This provision is substantially similar to the retaliation prohibition in Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–3(a) (1994) ("[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by" Title VII). Given that similarity, and given that in dealing with claims of discrimination under the ADA we use the same burden-shifting approach that we use in dealing with discrimination claims under Title VII, *see, e.g., Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 ·(2d Cir.1998), we conclude that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA. *Accord Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1328 (11th Cir.1998); *Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 753 (9th Cir.1998); *Steffes v. Stepan Co.,* 144 F.3d 1070, 1074 (7th Cir.

1998); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998).

■■■■ To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action. *See generally Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 130 (2d Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995); *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). In dismissing Sarno's ADA retaliation claim, the district court apparently concluded that Sarno's complaint to the EEOC was not a protected activity because his condition was not a disability within the meaning of the ADA. We do not endorse that rationale because a plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a " 'good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998) (construing Title VII) (quoting *Manoharan v. Columbia University College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988)).

■■■■ Nonetheless, "we are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied," *Leecan v. Lopes,* 893 F.2d 1434, 1439 (2d Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990), and we do so here because the record reveals that there is no legally sufficient evidence to support at least one other element of Sarno's prima facie case, *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (where undisputed facts reveal that there is an absence of sufficient proof as to one essen-

tial element of the claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment); *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir.1992) (same), *cert. denied*, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993).

For purposes of this appeal, we assume *arguendo* (a) that Sarno had a good faith, reasonable belief that his medical condition constituted a disability within the meaning of the ADA, and (b) that as a matter of law a former employer's giving an entirely neutral reference to an inquiring prospective employer, leading the prospective employer to decline to hire the applicant, can constitute an adverse employment action, *cf. Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1054 (2d Cir. 1978) (per curiam) (employer "had refused to give [plaintiff] a letter of recommendation and had made disparaging and untrue statements about her to her prospective employers, all in retaliation for her filing with the [EEOC]"). Where, however, there is no admissible evidence that the statements of the former employer caused or contributed to the rejection by the prospective employer, the plaintiff has failed to present a prima facie case. *See, e.g., Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir.1988) (plaintiff failed to establish a prima facie case of retaliation under Title VII where he failed to prove that prospective employer's failure to hire him was causally related to the negative reference provided by his former employer).

In the present case, Sarno did not present an affidavit or other sworn testimony from any Anthony Concrete official attributing its decision to DEGI's communication. Rather, Sarno simply asserted in an affidavit that he "was told" by Anthony Concrete that he was not hired because DEGI "would not provide a positive reference" (Affidavit of Michael Sarno dated July 24, 1997, ¶ 21). Sarno's affidavit did not constitute competent evidence of the reason for Anthony Concrete's decision.

Rule 56 provides that an affidavit submitted in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *see H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit). Sarno's statement as to what he "was told" was hearsay that would not be admissible at a trial. Since he presented no sworn statement from Anthony Concrete, he failed to adduce any evidence sufficient to create a genuine issue to be tried as to his contention that DEGI's neutral communication to Anthony Concrete caused Anthony Concrete not to hire him and hence was an adverse employment action. Summary judgment dismissing the retaliation claim was thus appropriate.

### B. *The FMLA Claim*

To the extent pertinent to the present action, the FMLA was enacted because of Congress's view that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods...." 29 U.S.C. § 2601(a)(4). In an effort to enable an employee "to take reasonable leave for medical reasons," *id.* § 2601(b)(2), Congress enacted substantive provisions entitling eligible employees to temporary leave, to certain continuing benefits, and to reinstatement, as discussed in pertinent part below, and made it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under ... subchapter [I of the Act]," *id.* § 2615(a)(1). The Act grants eligible employees affected by such unlawful conduct a private right of action for damages or equitable relief. *See id.* § 2617(a)(1) ("[a]ny employer who violates section 2615

of this title shall be liable to any eligible employee affected").

Subchapter I of the FMLA, codified at 29 U.S.C. §§ 2611–2619, sets forth the Act's substantive provisions. To the extent pertinent to this action, § 2612 provides that

> an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . .
>
> . . . .
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(D). Section 2614 provides in pertinent part that

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

*Id.* § 2614(a)(1).

The FMLA directs the Secretary of Labor to, *inter alia*, "prescribe such regulations as are necessary to carry out subchapter I," 29 U.S.C. § 2654, and regulations have been promulgated in 29 C.F.R. Pt. 825. Those interpreting the return-from-leave provisions of the Act state, *inter alia*, that

> [i]f the employee has been on a workers' compensation absence during which FMLA leave has been taken concurrently, and after 12 weeks of FMLA leave the employee is unable to return to work, the employee no longer has the protections of FMLA and must look to

the workers' compensation statute or ADA for any relief or protections,

29 C.F.R. § 825.216(d), and that

> [i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA,

*id.* § 825.214(b).

■ The record in the present case permits no inference that DEGI denied, restrained, or interfered with Sarno's exercise of or attempt to exercise any of the above rights. It is undisputed that Sarno informed DEGI that he would be "out on workmen's comp."; that DEGI informed Sarno that it would treat his absence as FMLA leave; that Sarno was entitled to a maximum of 12 workweeks of leave under § 2612(a)(1)(D); and that he received those 12 weeks of leave. The fact that Sarno was not restored to his position at the end of that 12–week period did not infringe his FMLA rights because it is also undisputed that at the end of that period he remained unable to perform the essential functions of his DEGI position. Thus, under 29 C.F.R. §§ 825.216(d) and § 825.214(b), respectively, the FMLA did not entitle Sarno to be restored to his former position or to any other position.

Nor could any rational factfinder conclude that Sarno's exercise or attempted exercise of his FMLA rights was in any way affected by DEGI's failure to inform him that the Act entitled him to a leave of up to 12 workweeks. Assuming *arguendo* that Sarno should have been given more explicit notice than was given (we note that the Act itself provides only for the posting of summary notices, *see* 29 U.S.C. § 2619(a), and that the additional notice provisions set out in the regulations are highly ambiguous, *see* 29 C.F.R. §§ 825.301(a)(1), (a)(2), (b)(1)(i)-(viii), and (b)(2)), Sarno's right to reinstatement could not have been impeded or affected by the lack of notice because his leave was

caused by "a serious health condition that [made him] unable to perform the functions of [his] position," 29 U.S.C. § 2612(a)(1)(D), and it is undisputed that that inability continued for some two months after the end of his 12–week FMLA leave period. Any lack of notice of the statutory 12–week limitation on FMLA leave could not rationally be found to have impeded Sarno's return to work.

We note that the FMLA also entitles an eligible employee to take leave for purposes other than his health-related inability to perform the functions of the job, such as the birth or adoption of a child, or the care of a seriously ill family member, *see* 29 U.S.C. §§ 2612(a)(1)(A), (B), and (C). We express no view as to whether the failure of an employer to explain the 12–week limitation to an employee who uses or attempts to use FMLA leave for those other permitted purposes may affect that employee's exercise of rights granted by the Act.

■ Finally, to the extent that Sarno contends that the assumed right to notice stands as an independent right under the Act, and that an employee may sue the employer for failure to give notice even if that failure in no way affected the employee's leave, benefits, or reinstatement, we reject that contention. The Act makes it unlawful for the employer to impede an employee's actual or attempted "exercise" of a right provided under subchapter I. A right to receive notice is not a right that the intended recipient of the notice "exercise[s]." We decline to interpret the FMLA as giving an employee a right to sue the employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act.

## CONCLUSION

We have considered all of Sarno's arguments on this appeal and have found them to be without merit. The judgment dismissing the complaint is affirmed.