**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALICE ROBBEN

      Plaintiff-Appellant,

v.

MARVIN RUNYON, POSTMASTER
GENERAL, UNITED STATES
POSTAL SERVICE,

      Defendant-Appellee.

No. 98-3177
(D.C. No. 96-1154-JTM)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, Circuit Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

———————————————————

Alice Robben, a part-time employee of the United States Postal Service in Oakley, Kansas (population 2000) brought suit against Marvin Runyon, Postmaster General, United States Postal Service in the United States District Court for the District of Kansas. By amended complaint, Robben in a first count charged the defendant with "Disability Discrimination/Retaliation" in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and in a second count charged

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

"Sexual Discrimination/Retaliation" in violation of Title VII, 42 U.S.C. §2000e-1, *et seq*. After the defendant filed an answer, discovery ensued. Thereafter, the defendant filed a motion for summary judgment which the district court, after hearing, granted. *See Robben v. Runyon*, No. 96-1154-JTM, 1998 U.S. Dist. LEXIS 2502. Robben appeals the judgment entered. We affirm.

On February 8, 1993, Robben, who had begun her employment with the Postal Service in 1986, applied for the position of Postmaster at the Grinnell, Kansas Post Office, but Larae Gibson, the Postmaster in Monument Kansas, was appointed to that position on April 15, 1993 by Richard Moore, then manager for Post Office Operations. It was Robben's belief, and she offered evidence to indicate, that at the time of her appointment, Gibson and Moore were "romantically involved" and such was the reason Moore selected Gibson in preference to her. This scenario was the basis for Robben's charge of sex discrimination.

As concerns Robben's charge of disability discrimination, as indicated Robben was a part-time clerk (with no guarantee of any number of hours per week) at the Oakley office. As such, she was required to lift packages and from time to time to deliver city mail on foot. On May 18, 1993 Robben returned from a period of absence with a Return to Duty Form, signed by a physician, which stated that she suffered from an acute back strain, spondylolisthesis and scoliosis,

and should avoid lifting more than 40 pounds and also should not walk for long periods of time. Postal clerks and carriers are required to be able to lift 70 pounds, carry 45 pounds, and perform repeated bending, twisting, standing and walking up to 8 hours per day. Notwithstanding, it is agreed that the defendant, at that point in time, attempted to accommodate Robben by having others do her lifting and walking. Sometime in January 1994, clerks who were doing Robben's lifting and walking complained that Robben was getting a disproportionate amount of time as a counter clerk, to their detriment. As a result, Robben was asked to provide more medical documentation for her work restrictions. About this time, the clerk duties were divided equally with all other clerks, which resulted in fewer total hours for Robben.

In the Spring of 1994, the Central Plains District issued a policy requiring all employees, whose duties were limited due to claimed physical impairment, to undergo a fitness examination. Accordingly, Robben underwent a fitness for duty examination. Such examination revealed that her condition was chronic and that she would not be able to perform all of the duties of a clerk. In a letter of May 3, 1994, Robben was advised that she could not continue in her same position since she was unable to perform the essential duties for which she was hired and was informed that she could apply for disability retirement or regular retirement or request permanent assignment to light duty or resign. In this regard, Robben

decided to apply for disability retirement and on May 23, 1994, was taken off the schedule and placed on sick leave. Her request for disability retirement was later denied. In late July, 1994, Robben returned to work after being advised that it might be possible to work around her physical limitations by altering her work schedule. A grievance was later filed concerning Robben's use of sick leave, which grievance was later settled. As a part of the settlement it was agreed to "accommodate" Robben's lifting restrictions and reinstate her sick leave. At oral argument we were advised that Robben is still employed as a part time clerk by the service.

The district court granted the defendant summary judgment on Robben's claim of sex discrimination on the basis our then recent case of *Taken v. Oklahoma Corp. Comm'n.*, 125 F.3d 1366 (10th Cir. 1997). The district court granted the defendant summary judgment on Robben's claim of disability discrimination on two grounds: (1) Robben failed to show that she was "disabled" as such is defined in the statute and, alternatively (2) even assuming statutory disability, Robben did not show that the defendant failed to provide reasonable accommodation. In like fashion, the district court rejected Robben's claim of retaliation.

We agree that Robben's Title VII claim of sex discrimination is controlled by *Taken*. In *Taken*, a white female was passed over for promotion and a black

-4-

female who was romantically involved with a black man who was one of the three-man committee which selected the black female for promotion in preference to the white female. The white female then brought suit against her employer claiming race and sex discrimination under 42 U.S.C. §2000e, *et seq.* The district court entered summary judgement for the employer on both claims.

As concerns the claim of sex discrimination, we said, in *Taken*, that the white female had not stated a claim for Title VII relief based on sex discrimination because any preferential treatment was not based on sex discrimination but was based on a consensual romantic relationship between a superior and an employee, all of which did not afford the non-selected white female Title VII relief. Although the action may have been unfair, it does not violate Title VII unless it is based on a prohibited classification. *Id.* at 1370. In other words, the acts of the employer were not based on the white female's gender. So here, Robben's non-selection for Postmaster at Grinnell, Kansas was not because she was female, but was precipitated by the romantic relationship between Gibson and Moore.

As indicated, the district court granted the defendant summary judgment on Robben's claim of disability discrimination on two grounds, namely no proof of "disability" and the failure of Robben to show that the defendant had failed to

accommodate her alleged impairment. 29 U.S.C. §705(9) defines "disability" as

follows:

> The term "disability" means–
> (A) except as otherwise provided in subparagraph
> (B), a physical or mental impairment that
> constitutes or results in a substantial impediment
> to employment; or
>
> (B) for purposes of sections 701, 713, and 714,
> and subchapters II [29 U.S.C.A. §760 et seq.], IV
> [29 U.S.C.A. §780 et seq.], V [29 U.S.C.A. §790
> et seq.], and VII [29 U.S.C.A. §796 et seq.] of
> this chapter, *a physical or mental impairment that
> substantially limits one or more major life
> activities* (emphasis added).

The district court held that Robben had failed to show that she had a

physical impairment that substantially limited one or more of her major life

activities, citing *inter alia, Welsh v. City of Tulsa, Okl.*, 977 F.2d 1415 (10th Cir.

1992). We agree that under the rationale of *Welsh* Robben is not statutorily

disabled. In that case, we spoke as follows:

> As to the second element, "the statutory language,
> requiring a *substantial* limitation of a *major* life
> activity, emphasizes that the impairment must be a
> significant one." *Forrisi v. Bowen,* 794 F.2d 931, 933
> (4th Cir. 1986). While the regulations define a major
> life activity to include working, this does not necessarily
> mean working at the job of one's choice. *Tudyman v.
> United Airlines*, 608 F.Supp. 739, 745 (D. Cal. 1984).
> Several courts that have addressed the issue have
> decided that "an employer does not necessarily regard

an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Forrisi*, 794 F.2d at 934.

*Id.* at 1417-18.

Alternatively, the district court held that even assuming statutory disability, Robben did not show that the defendant had failed to provide reasonable accommodations citing *Gilbert v. Frank*, 949 F.2d 637 (2nd Cir. 1991). In *Gilbert*, the Second Circuit held as follows:

> The suggestion that coworkers might perform this part of Gilbert's job as Manual MD Clerk likewise sought the elimination, for Gilbert, of essential functions of the job. We note that the Postal Service witnesses' response to the trial questions containing these suggestions did nothing to supply the gaps in Gilbert's prima facie case. The witnesses, who were, respectively, managers of operations and personnel, stated that having a coworker do the heavy lifting for Gilbert would not be a reasonable way to operate for several reasons, including (1) the fact that Gilbert would not know until he attempted to lift a sack how much it weighed, and the very attempt to handle a too-heavy sack could thus pose a danger to Gilbert and his coworkers; and (2) having two workers performing tasks that one worker is assigned would slow down and reduce the productivity of the operation.

*Id.* at 644.

The fact that the defendant initially accommodated Robben but discontinued such accommodation while it re-evaluated the whole situation (and

then later resumed the "accommodation") does not aid Robben in her claim of disability discrimination. In *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997) the Eleventh Circuit spoke as follows:

> In this case there appears to be little doubt that, for quite some time and perhaps with relatively minor disruption or inconvenience, the City of Alpharetta was able to accommodate Holbrook with respect to those essential functions he concedes he cannot perform without assistance. It is equally apparent, however, that the City of Alpharetta's previous accommodation may have exceeded what the law requires. We do not seek to discourage other employers from undertaking the kinds of accommodations of a disabled employee as those performed by the City of Alpharetta in Holbrook's case; indeed, it seems likely that the City retained a productive and highly competent employee based partly on its willingness to make such accommodations. However, we cannot say that the City's decision to cease making those accommodations that pertained to the essential functions of Holbrook's job was violative of the ADA. The district court properly granted summary judgment on Holbrook's Title I ADA and Rehabilitation Act claims.

As to Robben's claim of retaliation as such relates to her claim of sex discrimination, the district court held that a party cannot maintain a Title VII claim when the alleged conduct that is the subject of the complaint, even if true, is not actionable under Title VII, citing *Harvey v. Chevron U.S.A., Inc.,* 961 F. Supp. 1017 (S. D. Tex. 1997). In *Harvey,* the plaintiff complained of favoritism to a manager's paramour and retaliation for her complaints about it. The court

held that favoritism does not constitute gender discrimination in violation of Title VII, and that, as a result, there was no valid claim for retaliation because the plaintiff "did not complain of any activity protected by Title VII." *Id.* at 1033. In thus holding, the district court recognized that a "retaliation claim may be premised on adverse employment decisions which are in retaliation for opposition to discrimination, even if no discrimination in fact existed, so long as the plaintiff was motivated by an objectively reasonable belief the conduct was illegal," but apparently concluded that the facts of the instant case did not come within that rule. In this general connection, *see Robbins v. Jefferson County Sch. Dist.,* 186 F.3d 1253, 1258 (10th Cir. 1999); *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 385 (10th Cir. 1984). As to Robben's claim of retaliation under the Rehabilitation Act, the district court found that Robben failed to provide any evidence connecting any adverse action and any protected activity, citing *Marx v. Schnuck Markets,* 76 F.3d 324, 329 (10th Cir. 1996).

In short, we are in general accord with the district court's analysis of the evidentiary matter before it on summary judgment and its understanding of the above cited authorities, and are in complete accord with the result reached.

Judgment affirmed.

Entered for the court,


Robert H. McWilliams
Senior Circuit Judge

*Murphy, J., concurring in part and concurring in the result.*

I concur in the majority opinion, with the exception of that portion treating Robben's Title VII retaliation claim. As to that portion, I concur only in the result and propose a more appropriate basis upon which to affirm.

In resolving Robben's Title VII retaliation claim, the majority cites an opinion of the United States District Court for the Southern District of Texas for the proposition that "a party cannot maintain a Title VII [retaliation] claim when the alleged conduct that is the subject of the [underlying] complaint, even if true, is not actionable under Title VII." Majority Op. at 8 (citing *Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017 (S.D. Tex. 1997)). The question of whether a plaintiff can state a Title VII retaliation claim when the underlying complaint did not state a valid Title VII claim is not, however, as simple as the majority suggests.

In broad language, this court has previously rejected the notion that the validity of a Title VII retaliation claim is contingent upon the validity of the underlying substantive Title VII claim. *See Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) ("Every circuit that has considered the issue, however, has concluded that opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated."); *Robbins v. Jefferson County Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999) ("[A] plaintiff

does not have to prove the validity of the grievance she was allegedly punished for lodging; 'opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated.'" (quoting *Love*)). Other circuits have announced the same rule of law in similarly broad terms. *See, e.g.*, *Sarno v. Douglas Elliman-Gibbons & Ives*, 183 F.3d 155, 159 (2d Cir. 1999) ("In dismissing [plaintiff's] ADA retaliation claim, the district court apparently concluded that [plaintiff's] complaint to the EEOC was not a protected activity because his condition was not a disability within the meaning of the ADA. We do not endorse that rationale because a plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." (quotation omitted))[**]; *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994) ("[O]ur cases hold that an employee may engage in statutorily protected expression under section 2000e-3(a) even if the challenged practice does not actually violate Title VII.").

---

[**]The retaliation provisions of the ADA are substantially similar to the retaliation provisions of Title VII. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

Sound policy rationales support the broad rule announced by this court in *Robbins* and *Love*. Despite Title VII's near thirty-year history, courts continue to struggle with the question of the types of workplace discrimination and harassment which are prohibited by Title VII. For instance, until resolved by the Supreme Court in 1998, there was substantial disagreement among the lower courts as to whether same-sex sexual harassment was prohibited by Title VII. *See Oncale v. Sundowner Offshore Servs., Inc.*, 118 S. Ct. 998 (1998). The rule posited in the majority opinion, however, operates as a significant impediment to the assertion of what might have once been considered novel civil rights claims, such as the claim in *Oncale*. With no exceptions for a plaintiff-employee's good faith, the rule employed by the majority ties the validity of the retaliation claim to the legal validity of the underlying Title VII claim. Such an approach conflicts with established precedent holding that Title VII's retaliation provisions are remedial in nature and should be construed broadly. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998).

Under the regime embraced by the majority, the incentives for asserting otherwise valid claims at the margins of Title VII are drastically reduced, if not eradicated. *See Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045 (7th Cir. 1980); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978).

The efficacy of Title VII as a bulwark against discrimination is thus diminished.

As noted by the Second Circuit in interpreting the Fair Labor Standards Act[***]:

> Congress made it illegal for any person . . . to retaliate against any employee for reporting conduct "under" or "related to" violations of the federal minimum wage or maximum hour laws, whether or not the employer's conduct does in fact violate those laws. Congress might have put the risk on the employee to do his or her homework and make sure that there was actually a violation before going to the authorities, but it instead protected the employee regardless. . . .
>
> The policy rationale is evident. Determining whether there is an actual violation can mislead even an experienced district court, and a sensible employee who knew he had to be right to enjoy whistle blower protection would think twice about reporting conduct which might turn out to be lawful.

*Sapperstein v. Hager*, 188 F.3d 852, 857 (2d Cir. 1999).

It is ultimately unnecessary to resolve Robben's retaliation claim by application of the questionable bright-line rule proposed by the majority. I concur in the result proposed by the majority, but on a different ground. A review of the record demonstrates that Robben has not stated a valid retaliation claim because she never contemplated that her protestations were pursuant to Title VII, as demonstrated by the absence of any claim of sex discrimination and the failure to reference Title VII in the anonymous letters. Instead, the limited evidence in the record, considered in the light most favorable to Robben, reveals

---

[***] Admittedly, the whistle blower provisions of the Fair Labor Standards Act are not substantially similar to the provisions of Title VII. The broad remedial intent of those provisions is, however, similar to Title VII.

-4-

that the anonymous letters represented a "moral" plea to postal service supervisors to step in and eliminate the paramour preference. *See Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997) (holding that to establish a *prima facie* case of retaliation, a plaintiff must demonstrate a good faith belief that her employer has engaged in an *illegal* employment practice); *Leanard v. City of Bellevue*, 860 F.3d 928, 932 (9th Cir. 1988) (holding that Title VII's "'opposition clause,' by its terms, protects only those employees who oppose what they reasonably perceive as discrimination *under the Act*."). Because the record is devoid of evidence that Robben reasonably believed either her activities were protected by or the activities she opposed were prohibited by Title VII, the district court properly granted summary judgment to the defendants on Robben's Title VII retaliation claim. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (holding that this court can affirm the district court on any grounds, "even grounds not relied upon by the district court"). Accordingly, I would resolve Robben's Title VII retaliation claim on that ground alone, leaving the far more troubling question answered by the majority for a case in which its resolution is necessary.