*Haran v. Orange Business Services, Inc.*

# United States Court of Appeals
# For the Second Circuit

August Term 2025
Argued: September 26, 2025
Decided: November 25, 2025

No. 24-2312

PATRICIA HARAN,

*Plaintiff-Appellant,*

*v.*

ORANGE BUSINESS SERVICES, INC.,

*Defendant-Appellee.*[1]

Appeal from the United States District Court
for the Southern District of New York
No. 21-cv-10585
Dale E. Ho, *Judge.*

---

[1] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Before:    RAGGI, LYNCH, and PARK, *Circuit Judge*s.

Orange Business Services, Inc. ("OBS"), a telecommunications company, fired Senior Account Manager Patricia Haran after several of the largest accounts she managed decided to stop using OBS's services. In the months before her termination, Haran had taken eight and a half days of paid time off to care for her sick daughter and mother. Haran sued OBS for interfering with her rights under the Family and Medical Leave Act ("FMLA") and retaliating against her for taking leave. The district court (Ho, *J.*) granted summary judgment to OBS.

We affirm. First, we conclude that Haran has not met her burden of establishing an FMLA interference claim because her supervisor's criticisms about her job performance did not reference her requests for leave, all of which he readily granted. Moreover, Haran was not prejudiced by OBS's failure to give her notice of her FMLA rights upon learning of her daughter's illness. Second, Haran failed to show retaliation because OBS terminated her based on performance, not her requests for leave. Finally, we affirm the district court's dismissal without prejudice of Haran's related claim under the New York City Human Rights Law.

_____

> LIANE FISHER (Michael Taubenfeld *on the brief*), Fisher Taubenfeld LLP, New York, NY, *for Plaintiff-Appellant*.
>
> JUSTIN A. GUILFOYLE (Amy J. Traub *on the brief*), Baker & Hostetler LLP, New York, NY, *for Defendant-Appellee*.

2

Seema Nanda, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Rachel Goldberg, Counsel for Appellate Litigation, Erin M. Mohan, Senior Attorney, Rose Meltzer & Shelley Trautman, Attorneys, Washington, DC, *for Amicus Curiae Acting Secretary of Labor in Support of Plaintiff-Appellant*.

———

PARK, *Circuit Judge*:

Orange Business Services, Inc. ("OBS"), a telecommunications company, fired Senior Account Manager Patricia Haran after several of the largest accounts she managed decided to stop using OBS's services. In the months before her termination, Haran had taken eight and a half days of paid time off to care for her sick daughter and mother. Haran sued OBS for interfering with her rights under the Family and Medical Leave Act ("FMLA") and retaliating against her for taking leave. The district court (Ho, *J.*) granted summary judgment to OBS.

We affirm. First, we conclude that Haran has not met her burden of establishing an FMLA interference claim because her supervisor's criticisms about her job performance did not reference her requests for leave, all of which he readily granted. Moreover, Haran was not prejudiced by OBS's failure to give her notice of her FMLA rights upon learning of her daughter's illness. Second, Haran failed to show retaliation because OBS terminated her based on performance, not her requests for leave. Finally, we affirm the district court's dismissal without prejudice of Haran's related claim under the New York City Human Rights Law.

3

## I. BACKGROUND

A.     Factual Background

OBS is an international telecommunications company that primarily sells products and services to multinational corporations. Haran joined OBS as a Senior Account Manager in 2017 to manage accounts headquartered outside the United States—"B-end" accounts. Haran was successful in her role from 2017 to 2019. Beginning in January 2020, she took on additional responsibility for managing accounts headquartered in the United States—"A-end" accounts.

In Haran's performance review for the first half of 2020, her supervisor, Adam Kimmick, stated that the year so far "was a challenge for [her] in her new territory." App'x at 223. He noted that she had several challenges working with her new A-end accounts, including issues with her projected revenue and miscommunications with her team and with a client. Although those issues raised the "concern that [Haran] may not be fully understanding feedback, or has not had the time to 'read between the lines' regarding indirect or non-verbal cues," Kimmick nevertheless stated his expectation that, based on her prior performance, Haran's performance for the second half of 2020 "will be on track to meet business objectives." *Id.* As a result, he gave Haran an overall rating of "fully successful" despite the problems he described.

In October 2020, Haran's daughter was diagnosed with a possible tumor in her femur and required surgery. Haran told Kimmick about this and asked "to take a few days off for [her] daughter's situation." App'x at 259. Kimmick told Haran to take off

4

the time she needed to "take care of [her] daughter." *Id.* Over the following three months, Haran requested leave intermittently and took a total of seven and a half days off to care for her daughter. Neither Haran nor Kimmick mentioned the FMLA, and Haran's time off was not treated as FMLA leave. Haran instead used some of her paid time off days.

Around this time, Haran began receiving more scrutiny at work. Kimmick began to check more regularly on the status of assignments and deals. Much of this scrutiny involved Haran's management of the Pfizer account, which was one of OBS's largest A-end accounts. OBS wanted to execute a new master agreement with Pfizer, but negotiations stalled because the parties reached an impasse over contractual terms. Kimmick repeatedly asked Haran whether she would be able to maintain the pace of her conversations with Pfizer, and a coworker informed Haran that Kimmick would transfer the Pfizer account to him if she was unable to participate in upcoming conversations. Haran felt increased pressure due to Kimmick's comments and states that she took less time off to care for her daughter than she otherwise would have. But nobody at OBS made negative comments about her taking time off or discouraged her from taking additional time off.

By the end of 2020, Haran met her performance objectives for her B-end accounts as well as her annual revenue quota. But three of her largest A-end accounts, including Pfizer, decided to stop using OBS's products. Those decisions were in the works before she took responsibility for the accounts, and Pfizer's decision to end its

5

relationship with OBS was due to OBS's refusal to accept Pfizer's requested contractual terms.

In Haran's performance review for the second half of 2020, Kimmick gave her an overall rating of "improvement needed."  He wrote that, although Haran made some progress in building a strategy with her team, she continued to face the same challenges that he had noted in her performance review for the first half of 2020.  In particular, he pointed out that Haran's strategy "has not resulted in an increase[] in proposed services" and that "her pipeline velocity is potentially not sufficient to meet her 2021 financial growth objectives."  App'x at 235.  According to Haran, in her performance review meeting, Kimmick also told her that she had a "lack of focus." *Id.* at 323.  Haran interpreted this comment to refer to her absences due to her daughter's illness.  When Haran challenged Kimmick about this comment, he told her that he meant that Haran should have been more focused on building relationships with Pfizer to overcome the legal impasse that resulted in losing the account.

During this period, Haran's mother was diagnosed with macular degeneration, and on February 12, 2021, Haran took one day of paid time off to take her mother to a doctor's appointment.  Again, neither Haran nor Kimmick mentioned the FMLA.  Nor did Haran report any negative response by Kimmick to her request for the day off, and she conceded that she was paid for that day.

On February 24, 2021, OBS terminated Haran's employment in a meeting attended by Haran, Kimmick, and a representative from human resources ("HR").  The HR representative first said that OBS was terminating Haran for failing to meet her 2020 quota, but

6

Kimmick clarified that OBS was terminating Haran because she was not expected to meet her 2021 quota.

B.     Procedural History

Haran sued OBS for interference and retaliation under the FMLA and familial status discrimination under the New York City Human Rights Law ("NYCHRL").  Following discovery, OBS moved for summary judgment on all of Haran's claims.  On July 29, 2024, the district court granted OBS's motion and dismissed Haran's FMLA interference and retaliation claims.  It also declined to exercise supplemental jurisdiction over the remaining NYCHRL claim, which it dismissed without prejudice.

## II.  DISCUSSION

Haran's FMLA claims fail because, on the record before us, any reasonable jury would be required to find that OBS terminated her based on her job performance, not her request for or decision to take leave.  Kimmick's criticism of Haran's performance did not interfere with the exercise of her rights under the FMLA.  Nor did OBS's decision to terminate Haran constitute retaliation against her under the FMLA.  Finally, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Haran's NYCHRL claim.

A.     Legal Standards

"This Court reviews a grant of summary judgment *de novo*, resolving all ambiguities and drawing all reasonable inferences against the moving party." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 421 (2d Cir. 2016).  "We will affirm the grant of summary

7

judgment only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotation marks omitted).

The Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, entitles "employees to take reasonable leave for medical reasons . . . and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). The FMLA "provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165-66 (2d Cir. 2017). As relevant here, the FMLA entitles employees to take a total of 12 workweeks of leave during any 12-month period[2] "[i]n order to care for the . . . daughter[] or parent, of the employee, if such . . . daughter[] or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

The FMLA and its related regulations impose several notice requirements on both employees and employers. An employee must first "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Once an employee requests FMLA leave or the employer "acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's

---

[2] FMLA leave is ordinarily unpaid, 29 U.S.C. § 2612(c), but an "employee may elect, or an employer may require" the employee to substitute accrued paid leave for any part of the 12-week period, *id.* § 2612(d)(2)(A).

8

eligibility to take FMLA leave within five business days." *Id.* § 825.300(b)(1). Employers must also provide written notice "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." *Id.* § 825.300(c)(1).

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). This provision permits an employee to sue an employer for certain FMLA violations. "FMLA claims come in at least two varieties: interference and retaliation." *Woods*, 864 F.3d at 166. Generally, "an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* "'Retaliation' claims, on the other hand, involve an employee actually exercising her rights . . . and then being subjected to some adverse employment action by the employer." *Id.*

B.    FMLA Interference

The FMLA prohibits employers from interfering with "the exercise of or the attempt to exercise" any right under the FMLA. 29 U.S.C. § 2615(a)(1). The regulations explain that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she

9

was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424.

The district court granted summary judgment to OBS based on its conclusion that Haran failed to introduce sufficient evidence to allow a jury to conclude that she was denied benefits under the FMLA. On appeal, Haran argues that she introduced adequate evidence of interference under discouragement and failure-to-provide-notice theories. We disagree.

### 1. *FMLA Discouragement*

Haran contends that OBS discouraged her from taking more leave by subjecting her to undue scrutiny and criticism of her job performance after she requested leave. We conclude that this is insufficient for an FMLA interference claim.

To start, it is undisputed that Haran requested seven and a half days off to take care of her daughter, all of which Kimmick readily granted. He encouraged her to "just take the time" she needed to care for her daughter, granted her requests to take paid time off, and never made negative comments about her taking days off.

Haran argues that she was nevertheless discouraged from taking more time off. She states that Kimmick "warned her that she would be removed from the Pfizer account" if she could not participate in upcoming conversations with Pfizer; "checked up on her to ascertain the status of her deals"; and "issued a negative performance evaluation" citing her "lack of focus." Appellant's Br. at

12. Haran does not argue that Kimmick ever mentioned her time off or her daughter's illness in connection with these warnings. In other words, Haran's argument is that she *subjectively* believed that her employer's criticism "could only relate to her absences due to her daughter's illness." *Id.* at 12-13.[3]

The district court concluded that the absence of any allegation that OBS referred to Haran's leave is fatal to her discouragement theory of FMLA interference. We agree. "Criticizing, even berating an employee's *substantive job performance* is not enough to assert a claim for interference under a discouragement theory." *Hockenjos v. Metro. Transp. Auth.*, No. 14-cv-1679, 2016 WL 2903269, at *9 (S.D.N.Y. May 18, 2016), *aff'd sub nom. Hockenjos v. MTA Metro-N. R.R.*, 695 F. App'x 15 (2d Cir. 2017) (emphasis added). That is true even if the employee subjectively feels pressure due to the criticism and decides to take less leave than she otherwise would have. We have stated that the "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006) (citation omitted).[4]

---

[3] Haran briefly asserts that Kimmick "directly attributed [Haran's lack of focus] to her daughter's illness and her intermittent leave of absence in late 2020." Reply Br. at 17. But the record does not support this conclusory assertion, and the passage of Kimmick's deposition that Haran cites in support does not mention Haran at all, much less her lack of focus or her daughter's illness.

[4] The cases Haran cites as examples of FMLA discouragement—none of which is binding—are not to the contrary. Instead, they highlight what

11

Here, Kimmick's scrutiny and criticism of Haran were specific to her job performance, particularly her management of the Pfizer account, not her requests for leave. *See supra* at 10-11. In the absence of any objective evidence that Kimmick's criticism related to her FMLA-eligible absences, Haran's subjective feeling of pressure not to take more time off due to her concerns about her performance is not sufficient for an FMLA interference claim, and the district court properly granted OBS's motion for summary judgment on that claim.

2. *Failure To Provide Notice*

Haran also argues that OBS interfered with her rights by failing to comply with the FMLA's notice requirements. The regulations promulgated under the FMLA provide that "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). But failure to follow these

is missing in her argument: a nexus between her requests for leave and the criticism she received. *See, e.g.*, *Avila-Blum v. Casa de Cambio Delgado, Inc.*, 519 F. Supp 2d 423, 428 (S.D.N.Y. 2007) (finding a disputed issue of material fact regarding interference where plaintiff "allege[d] that on at least two occasions, [defendant] told [plaintiff] outright that she would be fired if she took a period of leave to undergo treatment for her medical condition"); *Ziccarelli v. NYU Hosp. Ctr.*, No. 15-cv-9307, 2021 WL 797668, at *5 (S.D.N.Y Feb. 27, 2021) (denying summary judgment where employer called an employee on FMLA leave and "urged him to come back sooner" than scheduled); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015) ("One of the stated reasons for the non-renewal of [plaintiff's] contract was his absences—almost all of which appear[ed] to be related to FMLA-qualifying conditions," and the other reasons for the non-renewal were also "tied logically and practically to those absences.").

12

notice requirements is actionable interference only if an employee was prejudiced by this failure. The FMLA places on employees "the burden of proving [a] real impairment of their rights and resulting prejudice." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002). So "an employee may [not] sue the employer for failure to give notice . . . if that failure in no way affected the employee's leave, benefits, or reinstatement." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999).

Haran has not established a triable issue of fact as to whether OBS's failure to provide notice of her rights under the FMLA caused her prejudice. Rather, the record shows that it did not. Haran does not argue that she was unaware of her rights under the FMLA or dispute that she received a notice of such rights when she joined OBS. Nor does she argue that she would not have felt the pressure and shied away from taking more days off if OBS specifically informed her that she was eligible to take FMLA leave. Indeed, in a February 24, 2021, message to a coworker, Haran said that she "should have taken family medical leave off but [she] didn't want to let the company down." App'x at 251. At the end of the day, Haran took the time off she requested without obstruction, and she does not claim that she exhausted her allotted paid time off days. Any lack of notice thus did not affect Haran's "exercise of or attempt to exercise any substantive right conferred by the [FMLA]" and cannot serve as the basis for an FMLA interference claim. *Sarno*, 183 F.3d at 162.

C.    FMLA Retaliation

We analyze an FMLA retaliation claim "under the burden-shifting test set forth in *McDonnell Douglas*." *Graziadio*, 817 F.3d at 429. First, an employee must establish a prima facie case by establishing that 1) she "exercised rights protected under the FMLA";

13

2) she "was qualified for [her] position"; 3) she "suffered an adverse employment action"; and 4) "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* (quotation marks omitted). "If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Id.*

The district court granted summary judgment to OBS on Haran's FMLA retaliation claim because Haran did not actually exercise rights protected under the FMLA. The parties dispute whether Haran "exercised rights protected under the FMLA" when she told OBS about her daughter's illness but took paid time off. We need not reach that issue because even if Haran exercised FMLA rights by taking paid time off and otherwise established her prima facie case, she has not adduced evidence showing that OBS's legitimate, non-discriminatory explanation for terminating her was pretextual. *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) ("[W]e are free to affirm a decision . . . on any grounds supported in the record, even if it is not one on which the trial court relied.").

Haran's retaliation claim relies on the same theory as her interference claim—*i.e.*, that Kimmick's comments suggested that he disapproved of Haran taking leave. She submits that a factfinder could infer that she was terminated in retaliation for taking leave because of Kimmick's negative comments about her "lack of focus," "in conjunction with a negative performance review and on the heels of scrutinizing and pressuring Ms. Haran to perform." Reply Br. at 17-18. And she argues that OBS's explanation for firing her—which

14

echoed Kimmick's concerns about Haran's projected 2021 sales—was pretextual.

But as explained above, the district court correctly rejected Haran's assertion that Kimmick's criticisms related to her leave. Haran argues that these criticisms were pretextual because her allegedly deficient sales pipeline was caused by factors outside her control and because she presented "a solid plan to increase her sales funnel." *Id.* at 18-19. But Haran's "mere disagreement with her supervisors', colleagues', and HR's assessment of her work performance is insufficient to raise a triable issue of fact regarding pretext." *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 525 (S.D.N.Y. 2019) (cleaned up); *see also Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-835-cv, 2022 WL 893716, at *3 (2d Cir. Mar. 28, 2022) (summary order) ("Generally, an employee may not create an issue of fact supporting a finding of pretext by questioning an employer's assessment of her job performance.") (citation omitted).

Nor does the temporal proximity between Haran's leave and her termination raise a triable issue regarding pretext. There was a short gap between Haran taking one day off to care for her mother on February 12 and her termination on February 24. But Haran took the bulk of the leave at issue (7.5 out of 8.5 days) between October and December of 2020, several months before her termination in February 2021. In any event, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). Moreover, Kimmick first raised concerns about Haran's ability to create and maintain a sales pipeline with A-end accounts in July 2020, several months *before* Haran took leave. So OBS did not proffer shifting or inconsistent explanations for terminating Haran. Instead, OBS's stated reason for

15

terminating Haran tracked Kimmick's criticism of Haran's inability to generate new revenue from her A-end accounts, which predated her leave requests. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000) (explaining that the "consistency of the viewpoint expressed . . . further supports [employer's] proffered nondiscriminatory reason" for the adverse employment action).

We thus affirm the district court's grant of summary judgment for OBS on Haran's FMLA retaliation claim.

D.     NYCHRL Claim

Finally, the district court declined to exercise supplemental jurisdiction over Haran's NYCHRL claim, which it dismissed without prejudice. "This Court reviews for abuse of discretion a district court's decision declining to exercise supplemental jurisdiction." *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010). Haran does not challenge the dismissal of her NYCHRL claim. In any event, we conclude that the district court—having properly dismissed Haran's federal law claims—did not abuse its discretion by declining to exercise supplemental jurisdiction over her NYCHRL claim. *Cf. Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006).

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.