Cynthia C. STEPHENS, Plaintiff,

v.

THOMAS PUBLISHING CO., INC., et al., Defendants.

No. 01 Civ. 7131(DC).

United States District Court, S.D. New York.

Aug. 26, 2003.

Solotoff & Solotoff, by Lawrence Solotoff, Cheryl Solotoff, Great Neck, NY, for Plaintiff.

Proskauer Rose, LLP, by Paul Salvatore, Andrew Gutterman, Stephen Malone, New York City, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this employment discrimination case, plaintiff Cynthia C. Stephens takes a kitchen-sink approach: her complaint asserts ten causes of action, and many of the individual causes of action assert multiple claims or potential claims. For example, the first cause of action is entitled "disability discrimination" in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), but in fact it alleges that defendants violated the ADA by: discriminating against plaintiff because of her disability "and/or" defendants' "perception of her disability"; refusing to reasonably accommodate her or to "appoint" her to a position for which she was qualified; creating a "severe and pervasive

retaliatory and hostile work environment"; and "retaliating against her and/or effectively terminating her, and/or constructively terminating her employment." (Compl.¶ 116).[1] Hence, the first cause of action alone asserts eight claims or potential claims.

Plaintiff takes a similarly unfocused approach in opposing defendants' motion for summary judgment. Instead of setting forth a succinct statement of the material facts in her memorandum of law, she incorporates by reference a 43–page, 168–paragraph Rule 56.1 Statement. Instead of providing a "short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," as required by Local Rule 56.1(b), plaintiff sets forth a lengthy, argumentative recitation of virtually all the facts she deems relevant—whether they are disputed or not.

As a consequence, the Court's task of determining whether genuine issues of material fact exist for trial has been made more difficult. Upon review of the materials submitted by the parties, I conclude that triable issues of fact exist with respect to two claims only. Hence, defendants' motion for summary judgment is granted in part and denied in part.

## STATEMENT OF THE CASE

### A. The Facts

Except as stated otherwise, the following facts are not disputed for purposes of this motion:

Stephens was employed by defendant Thomas Publishing Company, Inc. ("Thomas") from 1990 until October 2000. She was a marketing manager when her employment with Thomas ended.

In January 2000, Stephens was diagnosed with breast cancer. (Stephens Dep. 161–62). In February 2000, she underwent a lumpectomy in her left breast. (*Id.* 168–69). She requested and was granted time off pursuant to the Family and Medical Leave Act (the "FMLA"), from February 9 through March 5, 2000. (*Id.* 169; PX 9). Although she was not permitted to travel during this period, she did some work at home and had no other limitations on her ability to work during that time. (Stephens Dep. 179, 428–30, 445–46). She was cleared by her doctor to return to work beginning March 6, 2000. (*Id.* 169; Kanowitz Ex. 8).

When Stephens returned to work in March 2000, she was able to perform all essential aspects of her job. (Stephens Dep. 177–78). The only accommodation she requested was intermittent FMLA leave for follow-up chemotherapy treatments, and Thomas granted her request. (*Id.* 172–74, 435–37; PX 9; Kanowitz Ex. 10). The treatments were scheduled every third week from March through July 2000, and Stephens was given one or two days off each time because of the resulting fatigue and other side effects. (Stephens Dep. 435–37; Compl. ¶¶ 50, 65).

On June 12, 2000, Stephens requested a leave from June 12 through September 4, 2000, with short-term disability benefits. Thomas granted her a leave and paid her

---

1. References to "Compl." are to the complaint filed on August 2, 2001; references to "Stephens Dep." are to the deposition of plaintiff on June 3, 2002; references to "PX" are to plaintiff's exhibits; references to "Kanowitz Ex." are to exhibits to the deposition of Dr. Jane Kanowitz on January 6, 2003; references to "Molofsky Aff." are to the Affi- davit of Ivy Molofsky, dated April 3, 2003; references to "Feld Dep." are to the deposition of Renee Feld on February 25, 2003; references to "Williams Dep." are to the deposition of June Henry Williams on February 6, 2003; references to "Pl. Mem." are to plaintiff's memorandum of law in opposition to defendants' motion for summary judgment.

salary in full for the time she was out, as it had done for her prior absences. (Stephens Dep. 213–14, 311–14; Kanowitz Dep. 102–06; PX 14). Stephens was reinstated to her position on September 5, 2000, following her return from leave. (Stephens Dep. 330–31; Molofsky Aff. ¶ 9).

As she testified at her deposition, with the exception of the two-week period following her surgery in February 2000, Stephens did not consider herself disabled at any time in 2000. (Stephens Dep. 446). Throughout 2000, she required no assistance in caring for herself, except for a cleaning person who assisted in cleaning her home in February and early March. (*Id.* 438–39). She bathed and dressed herself, cooked, drove and took public transportation, and had no problems breathing, talking, hearing, seeing, or writing. (*Id.* 439–43).

Stephens's employment with Thomas terminated on October 9, 2000; she contends she was fired, while defendants contend she resigned. (*Id.* 399–400). At that time, and as had been the case from September 5, 2000, her health was "fine" and she had no medical conditions that interfered with her ability to do her job or carry on her day-to-day life activities. (*Id.* 423–24).

## B. *Prior Proceedings*

Stephens filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") on February 21, 2001. (PX T). The EEOC issued a right-to-sue letter on May 8, 2001, stating that it was "unable to conclude" that the relevant statutes had been violated. (PX U).

On August 2, 2001, Stephens commenced this action against Thomas and three individual officers of Thomas: Carl Holst-Knudsen, Ralph E. Richardson, and Thom-

as Tanner. The parties engaged in discovery, and this motion followed.

## DISCUSSION

Stephens's claims can be grouped into the following categories: (a) discrimination based on her gender; (b) discrimination based on her actual disability; (c) discrimination based on Stephens's record of a disability; (d) discrimination based on defendants' perception that she was disabled in that she was (i) subjected to a hostile work environment and (ii) discharged or constructively discharged; (e) violation of the FMLA; and (f) retaliation for exercising her rights under the various statutes. The claims are asserted under federal, state, and city law. I address each category in turn.

## A. *Gender*

Stephens's gender discrimination claims are dismissed, for, on the record before the Court, no reasonable jury could find that her gender was a motivating factor in any of defendants' employment decisions.

The only purported evidence of gender discrimination offered by Stephens is described at pages 14 to 16 of her memorandum of law in opposition to defendants' motion. But this evidence consists solely of alleged discriminatory treatment of two co-workers: Renee Feld and June Williams. Stephens points to no acts of alleged gender discrimination directed at her.

The evidence is insufficient to permit the gender discrimination claims to go to a jury. First, although discriminatory acts against others may be relevant in certain limited circumstances to show discrimination against a plaintiff, the alleged discriminatory acts against Feld and Williams are insufficient to support an inference of gender discrimination against Stephens here

because the record contains *no* evidence to show that any adverse actions were directed toward her because of her gender. Second, it would appear that the employment decisions made as to Feld and Williams were based on legitimate, non-discriminatory reasons. Feld testified at her deposition in this case that she lost her job because of a department-wide restructuring, and that she was not surprised by the termination of her employment because of the "lack of work" and because "the whole department was basically gone." (Feld Dep. 27–29). Williams likewise testified at her deposition that her position was eliminated because of a restructuring and that her duties were shifted to an existing employee. (Williams Dep. 49, 111–12). Third, even assuming Feld and Williams were subjected to discrimination, the circumstances are dissimilar—in Stephens's view, Williams purportedly was subjected to pregnancy and race discrimination and Feld purportedly was subjected to sexual harassment. Stephens does not assert such claims in this case. (Pl. Mem. 14–16; Stephens Dep. 456).

Finally, Stephens's assertions that Feld and Williams were subjected to discrimination would raise numerous disputed collateral issues that have little bearing on the issues presented in this case. Hence, this evidence is inadmissible. Even with it, no jury could find that Stephens was discriminated against because of her gender. The gender claims are therefore dismissed.

## B. *Actual Disability*

■ Stephens appears to have abandoned her claims based on an actual disability. In her memorandum of law in opposition to defendants' motion, she argues that she was "disabled" only "because (1) she had a record of such impairment; and/or (2) her employer regarded her as having such impairment." (Pl. Mem. at 5).

Moreover, in light of her deposition testimony that she was only disabled for a two-week period following her February 2000 surgery (Stephens Dep. 446), Stephens cannot now reasonably argue that she was "disabled" within the meaning of the relevant statutes.

Finally, even though there is evidence in the record of other periods of temporary disability, including, for example, the period from June 12 through September 4, 2000, temporary conditions do not constitute disabilities under the ADA and other statutes. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Anyan v. N.Y. Life Ins. Co.*, 192 F.Supp.2d 228, 245 (S.D.N.Y.2002), aff'd mem., 68 Fed.Appx. 260 (2d Cir.2003). In *Pimental v. Dartmouth–Hitchcock Clinic*, 236 F.Supp.2d 177, 182 (D.N.H.2002), where an employee took an eight-month medical leave for breast cancer surgery and treatment sued under the ADA, the court dismissed the claims because plaintiff's conditions did not qualify as a disability under the ADA. *Accord Ellison v. Software Spectrum*, 85 F.3d 187, 191–92 (5th Cir.1996); *Treiber v. Lindbergh School District*, 199 F.Supp.2d 949, 958–60 (E.D.Mo.2002); *Tozzi v. Advanced Med. Mgt., Inc.*, No. S00–2363, 2001 WL 1081175, 2001 U.S. Dist. LEXIS 17910, at *15–18 (D.Md. May 24, 2001).

Hence, Stephens's claims based on actual disability are dismissed.

## C. *Record of a Disability*

■ Stephens's claims that she was discriminated against because of her "record" of a disability must be dismissed as well. First, the claim has not been pled; no such claim appears in her voluminous complaint. (*See, e.g.*, Compl. ¶ 116). Second, as noted above, no reasonable jury could find that Stephens was disabled within the meaning of the relevant statutes, and hence no rea-

sonable jury could find that she had a "record" of such a disability. *See Colwell v. Suffolk Co. Police Dep't,* 158 F.3d 635 (2d Cir.1998). Whatever "record" Stephens had related to her record of temporary impairments or short-term disabilities and are insufficient for these purposes.

Accordingly, the claims based on the purported "record" of a disability are dismissed.

## D. *Perceived Disability*

■ The motion for summary judgment is denied as to Stephens's claims based on defendants' alleged perception that she was disabled. Genuine issues of material fact exist as to whether Stephens's employment was terminated (actually or constructively) and whether she was subjected to a hostile work environment because of her perceived disability.

For example, Stephens testified at her deposition that:

— after she came back from a period of disability, her work was taken away from her and her duties were significantly reduced; she was no longer being copied on paperwork; and she was being excluded from meetings and ignored (Stephens Dep. 45–47, 354, 356, 373);

— her supervisors complained on several occasions to her that she was having memory problems and told her that "the chemotherapy ... seemed to be causing a problem with [her] memory"; in fact, she was not having memory problems and the comments were made when she was no longer on chemotherapy and "there was nothing wrong with [her] memory at all" (*id.* 52; *see also id.* 62, 365–66);

— her supervisors said to her that her drugs were "making [her] kind of exaggerate things, ... that [she] was kind of blowing [things] out of proportion" (*id.* 53);

— a supervisor told her that she was being "overly sensitive," "overly emotional," and "taking things way too seriously," and that he was "absolutely convinced" that these symptoms were caused by her "medications for her breast cancer" (*id.* 384);

— a supervisor stated to her that "he needed somebody aggressive, and that ... since [she] got sick, [she] wasn't as aggressive," and that she had "lost [her] edge" (*id.* 62, 403; *see id.* 404);

— the same supervisor told her that he was doing her job "because he didn't think that [she] was capable of doing it; that he needed somebody [who] was healthy and aggressive, and that [she] wasn't like that any more" (*id.* 65);

— her supervisor and a co-worker commented to her that her "face was so red" that she must have been "spending all [her] time at the beach, that on the days that [she] wasn't in the office, that [she] wasn't really sick at home, that [she] was at the beach," when in fact her face was red because of the chemotherapy (*id.* 295–96);

— a supervisor sent her home "once or twice," saying that she "didn't look well," even though she told him she was fine (*id.* 99);

— the same supervisor told her that she "looked like shit" and that if she insisted on being at work, she "should keep the door closed so that no one else could see [her]" (*id.* 100, *see id.* 186);

— on a "day-to-day basis," two supervisors made comments to her "about [her] thinning hair, [her] red face, [her] inability," and her memory problems, and told her that she "looked like shit" and that "[she couldn't] perform [her] job functions" (*id.* 451–52);

— a supervisor told her that her "illness was interfering with his business

and that [she] should go out on disability and come back when [she] was well" (*id.* 282; *accord id.* 297, 308);

— a supervisor threw some papers in her face, and he said to her "you should never have come back" (*id.* 368); and

— a supervisor told her "he wanted [her] to go out on disability [and] that he regarded [her] as disabled." (*id.* 456).

For purposes of this motion, I must accept Stephens's testimony. Therefore, I must assume that these actions were taken against her and that these statements were made to her. A reasonable jury could find from this testimony as well as other evidence in the case that defendants discriminated against Stephens by engaging in a pattern of severe and pervasive conduct based on their perception that she was disabled and that altered the conditions of her employment. A reasonable jury could find that Stephens's supervisors fired her or forced her out because they wrongfully believed that she was incapable of performing her job responsibilities because of her breast cancer and associated symptoms, imagined or otherwise.

A genuine issue of fact also exists as to whether Stephens was fired or voluntarily resigned. For example, Stephens testified that she was told defendants "were going to accept [her] resignation," when she "had never given a resignation." (*Id.* 219, *accord id.* 400, 416). In addition, certain documents, construed in Stephens's favor, also support her assertion that she was fired and that she did not resign. (*See, e.g.,* PXs L, O, R). Hence, a jury could find that defendants' claim that Stephens resigned was pretextual.

Accordingly, defendants' motion for summary judgment is denied as to Stephens's claims that defendants discriminated against her because of her perceived disability by terminating her employment (actually or constructively) and by subjecting her to a hostile work environment.

## E. *The FMLA*

Stephens has not presented sufficient evidence from which a reasonable jury could find that her rights under the FMLA were violated. Indeed, defendants demonstrate that Stephens received her entire FMLA entitlement (twelve weeks), and that, indeed, she received benefits beyond those required by the FMLA. She was granted two periods of FMLA leave, in March 2000 and from June 12, 2000 through September 5, 2000, as well as intermittent leave. She was provided with continuing medical benefits and was paid her salary while she was out of the office. She was returned to her position upon her return from leave. (Stephens Dep. 169, 172–74; 309; PXs 9, 14; Molofsky Aff. ¶¶ 9–10).

Stephens does not dispute any of these facts, but nonetheless asserts violations of the FMLA—but she does so only in wholly conclusory terms. (*See* Pl. Mem. at 22). She has presented no evidence from which a reasonable jury could find a causal connection between her exercise of her rights under the FMLA and the termination of her employment in October 2000. As to her claim that her job responsibilities were reduced, this claim is part of her perceived disability discrimination claim and in the circumstances here is not a sufficient basis for a separate FMLA claim.

Accordingly, the FMLA claims are dismissed.

## F. *Retaliation*

Finally, Stephens's retaliation claims must also be dismissed, for she has not presented sufficient evidence from which a reasonable jury could find a causal connection between any adverse employment decision and any protected activity as

contemplated by the anti-retaliation provisions of the relevant statutes. Although the record does contain evidence that she complained to her two immediate supervisors about certain of their conduct, Stephens concedes that she did not complain to any other management level employee or to anyone in Thomas's Human Resources Department. (Stephens Dep. 39–41, 380). Moreover, even in her discussions with Tanner and Richardson, she did not complain, in words or substance, that she felt she was being discriminated against because of disability or gender. (*Id.* 58–60, 69–70, 447). To the extent Stephens was complaining, she was not complaining about discrimination in violation of the civil rights laws.

Hence, the retaliation claims are dismissed as well.

## *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment is granted in part and dismissed in part. All of plaintiff's claims are dismissed except her claims that defendants discriminated against her because of her perceived disability by terminating her employment (actually or constructively) and by subjecting her to a hostile work environment.

SO ORDERED.