Kimberly L. GEROMANOS Plaintiff,

v.

COLUMBIA UNIVERSITY, College
of Physicians and Surgeons
Defendants.

No. 02 CIV.7181 CM.

United States District Court,
S.D. New York.

June 14, 2004.

Robert David Goodstein, Goodstein & West, Esqs., New Rochelle, NY, for Plaintiff.

Michael T. McGrath, Putney, Twombly, Hall & Hirson, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff Kimberly L. Geromanos ("Geromanos") filed this action against Columbia University, College of Physicians and Surgeons ("Columbia") pursuant to the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615(a)(1). Plaintiff alleges that Columbia interfered with her rights under FMLA by terminating her position while she was on FMLA leave for reasons in violation of the Act. Columbia moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Plaintiff was properly terminated for failing to comply with the conditions of her leave.

For the reasons set forth below, Columbia's motion is granted.

## I. FACTS

Plaintiff was employed as a Research Nurse and Clinical Coordinator in Columbia's Department of Medicine from June 1999 to 2002. As a research nurse, plaintiff was required to maintain a valid New York State Registered Nurse's license in order to treat patients. Although plaintiff also performed certain administrative duties, patient care comprised about 75% of plaintiff's time.

According to plaintiff's supervisor, Dr. DiMango, plaintiff's performance was excellent until the fall of 2001 when her performance began to deteriorate. (DiMango Aff., ¶ 3.) DiMango spoke with plaintiff about her performance problems on several occasions throughout the fall and winter of 2001–2002. (Id.) She also documented her concerns in an email to Paul Rothman, Chief of the Division of Pulmonary Medicine, on January 13, 2002. (Ex. I.)

The issue came to a head on March 18, 2002 at about 10 A.M. when DiMango observed plaintiff slumped over in her chair in what appeared to be a state of semi-consciousness. (Id. ¶ 7.) Plaintiff told DiMango she was not feeling well, and DiMango laid her on the floor and sought help from Dr. Miller. Although plaintiff complained about dizziness, she said she was alright and did not need medical attention. (Id. 9.) Nonetheless, DiMango and Miller determined that plaintiff needed to go to the emergency room, and escorted her to the emergency room at New York Presbyterian Hospital. (Id. ¶ 10; Pl. Rule 56.1 ¶ 3, Def. Rule 56.1 ¶ 14).

Plaintiff received treatment for alcohol intoxication in the emergency room and was admitted to the hospital where she remained for one night. During this time, Dr. DiMango advised plaintiff that she was being placed on medical leave so that she could undergo the rehabilitation that her treating doctors had advised. Prior to her release, plaintiff arranged to begin outpatient rehabilitation commencing on March 20 at the Nyack Hospital Recovery Center for Change ("Nyack"). Plaintiff was released from the hospital on March 19,

2002, and her medical leave began that same day.

It is a violation of Columbia's operating policies for any employee to report to work or remain at work under the influence of a controlled substance or alcohol, and employees are required to abide by this policy as a condition of employment. The policy further states, "Any employee who violates this Policy will be subject to serious disciplinary action up to and including termination." (Ex. J.) According to Galene Kessin, an Associate Vice President for Columbia's Human Resources, if plaintiff had refused to undergo treatment, she would have been terminated based on the March 18 incident. She was permitted to take the leave in lieu of termination.

After plaintiff agreed to get treatment, her leave was classified as FMLA medical leave pursuant to Columbia policy. (Ex. L.) Thus, her FMLA leave commenced on March 19, 2002. Plaintiff was not advised that Columbia considered her leave under FMLA. (Pl. Rule 56.1 14–17.)

Although FMLA does not require employers to provide paid leave, Columbia agreed to pay plaintiff her full salary throughout her leave, but only if plaintiff abided by certain conditions. By letter dated April 5, 2002, Dr. DiMango confirmed the conditions of plaintiff's leave. The letter described Columbia's concern regarding plaintiff's attendance and work performance, but stated that Columbia had agreed that:

Further action with regard to your attendance and work performance problems would be put on hold pending the following.

1. You will provide the department with a letter attesting to your admission to an accredited program of treatment and rehabilitation for alcohol abuse by April 9, 2002...The period of time spent in a treatment program will be considered a medical leave of absence. The time prior to your admission that you cannot medically document will be a leave, without pay.

2. *For In–Patient Treatment Program:*

 You must fully comply with and complete the treatment program to which you are admitted. Certification of completion from an authorized counselor in the program must be submitted to Mary McAllister or Hana Bloch [at Columbia].

 *For Out–Patient Treatment:*

 You must fully comply with and complete the treatment program to which you are admitted. You must also submit a weekly progress report from an authorized counselor in the program to Mary McAllister or Hana Bloch [at Columbia].

3. Prior to returning to work, you will be required to obtain clearance through the University's Occupational Health Services. At that time, the Return to Work program will advise you of the necessary documentation and procedures to be followed for such a clearance. In addition, upon your return to work you may be subject to testing for the use of alcohol at the discretion of the university on a periodic basis.

4. Failure to comply with the above will result in the termination of your services.

In closing, you should also be advised that upon returning to work you will be expected to correct the problems related to your attendance and work performance. Failure to do so will result in the termination of your services. (Ex. M.) Plaintiff acknowledges receipt of this letter. (Pl. 56.1 ¶ 9.)

Columbia notified the New York State Education Department, Office of Professional Discipline of the March 18 incident, and an investigation was conducted by OPD. (Def. 56.1 ¶ 33.) Columbia also advised plaintiff to apply for admission to the Professional Assistance Program (PAP) at the New York State Department of Education, which she did on April 22, 2002. (Ex. D.) Pursuant to the terms of the PAP, plaintiff was required to surrender her nursing license to the Department of Education, which she formally did on July 19, 2002. (Ex. C.) However, both plaintiff and Columbia were aware in May 2002 that she would need to surrender her license, and both knew that the earliest it would be restored was October 2002. Plaintiff's license was in fact restored in October of 2002, but plaintiff surrendered it again in November 2002 when she suffered a relapse.

In her Rule 56.1 statement, Plaintiff states that Columbia was not required to report the March 18 incident to the Education Department. Whether or not Columbia was legally required to report the incident is irrelevant for purposes of this motion. What is relevant is that plaintiff voluntarily agreed to surrender her license in April, well knowing that it would likely not be reinstated until October.

Columbia requires all employees on medical leave to apply for short term-disability in order to receive salary continuation benefits. To this end, Columbia sent plaintiff a DB–450 application form for completion. (Def. Rule 56.1 ¶ 12.) After learning that Plaintiff had not returned the DB–450 or any progress reports, Kessin called plaintiff to remind her to submit the paperwork, or else her leave would be converted to unpaid leave. (Kessin Aff. ¶ 17.) Columbia has not indicated when Kessin made this call, but it was presumably in mid to late April.

On May 1, plaintiff had still not submitted the required paperwork, and Kessin wrote plaintiff inquiring about the required doctor's note documenting the leave as medical leave. She also included another DB–450 form. In the letter, Kessin again informed plaintiff "failure [to submit required documentation] will result in your absence being converted to unpaid leave." (Ex. N).

On May 9, 2002, Kessin received a faxed copy of a DB–450 form from Diane Murchison, a case manager at Nyack. On the form, Dr. Evelyn Wasserman, a psychiatrist at the rehabilitation program, indicated that plaintiff had been diagnosed with alcohol dependency and would not be able to return to work until August 8, 2002. (Ex. O.)

On that same date, Columbia received progress reports from Nyack that described plaintiff's treatment from March 20 through May 3, 2003. (Ex. P.) The progress reports revealed that plaintiff had relapsed on two occasions. In the accompanying cover letter, dated May 1, Murchison wrote that plaintiff "is presently struggling with outpatient modality" and that "it is not our recommendation at this time that Kimberly return to the work-force." (*Id.*) Neither the fax cover sheet nor the cover letter indicates that the reports had been previously submitted to Columbia.

According to Columbia, it did not receive any further progress reports from plaintiff or Nyack until discovery in this lawsuit. (Def. 56.1 ¶ 40.) Plaintiff disputes this. Pointing to copies of progress reports dated April 12, 20, 27 and May 4, 10, 17, 24, and 31 (each of which has either Mary McAllister or Hana Bloch's name—the individuals identified in the April letter—and fax number in one of three fax address boxes on the reports), she hypothesizes that Nyack forwarded the weekly progress

reports to Columbia, but Columbia must not have gotten them because Bloch was on leave and McAllister's internship had ended. (Pl.56.1, ¶ 41.)

The reports dated April 12, 20, 27 and May 4 are identical to the ones received by Columbia on May 9, except they do not contain a fax transmission line at the top of the page with a date. (Pl.Ex. 12.) The absence of a fax transmission line suggests that while the reports were prepared, they may not have been faxed to Columbia until they were bundled and sent on May 9.

Performance reports for the rest of May, which Columbia says it never received, have been included in the record and were also attached to the Complaint. None of these reports bears a fax transmission line either. The May 10 and May 17 reports both indicate that plaintiff continued to use controlled substances during her rehabilitation program. The reports for May 24 and May 31 detail the program's recommendation that plaintiff transfer to an in-patient program, and the difficulty of getting plaintiff to follow-through with that recommendation. (Ex. Q, 5/24/02 report). Plaintiff was discharged from the Nyack program on May 23, 2002 because "plaintiff was unable to maintain abstinence and continues to function from a strong denial base." (Ex. B.) The discharge form indicates that a bed had been reserved for the in-patient program beginning on May 30. I am aware of no evidence that Geromanos received in-patient treatment.

In mid-May, DiMango learned that plaintiff had been working as a Lamaze instructor while on leave. On or about May 30, 2002, plaintiff met with DiMango and Mayra Marte–Miraz, the Director of Operations for the Department of Medicine, to discuss the status of plaintiff's leave. (Def. 56.1 ¶ 42.) At that meeting, plaintiff confirmed that she had been working as a Lamaze instructor. She also admitted that she had suffered two relapses. (Pl. Rule 56.1 ¶ 29; Def. 56.1 ¶ 42–44.)[1] It is undisputed that Columbia was aware, before this meeting, that Geromanos had worked part time as a Lamaze instructor before going on leave. Defendant claims to have been unaware that Geromanos continued that work while on medical leave. Plaintiff, however, asserts that DiMango gave her oral permission to continue working as a Lamaze coach during her leave. (Pl. 56.1 ¶ 23.)

Plaintiff also claims that, during the May meeting, the parties agreed that plaintiff would return to work as soon as practicable, in a position that did not require a registered nurses license. (Pl. 56.1 ¶ 37.) However, the testimony she cites does not support that assertion. What is apparent from the testimony cited in support of Plaintiff's Rule 56.1 Statement ¶¶ 37–38 is that DiMango and Geromanos discussed the possibility of plaintiff's returning to work, and the fact that plaintiff may not have a license was also discussed. Plaintiff also states that DiMango knew plaintiff would have to surrender her license, but that she wanted plaintiff back anyway. (Pl. 56.1 ¶ 38.) While this may

---

1. Plaintiff states that DiMango asked her inappropriate questions (presumably about her sobriety) and that because DiMango was plaintiff's primary care physician she owed a duty of confidentiality to her and that plaintiff's statements to her in this meeting were that of a patient to a doctor not to a supervisor. For the same reason, plaintiff argues that DiMango should not have reported the March 18 event to her supervisors. (Pl. 56.1 ¶ 31–35.) In so far as these statements contain legal conclusions they are inappropriate argument, and as defendant requests are stricken. Although evidence suggests that DiMango did attempt to withdraw as plaintiff's primary care physician that issue is irrelevant for purposes of this motion and will not be considered.

have been expressed to plaintiff, the testimony does not demonstrate there was any agreement to find plaintiff an unlicensed job as soon as possible.

According to Columbia, after the May meeting DiMango consulted with the Human Resources Department and learned that performing work for compensation while on leave was an abuse of the Salary Continuation Program. (Def. 56.1 ¶ 45.) Columbia then decided to terminate plaintiff for two reasons: (1) she had been working for compensation while on paid leave, and (2) she failed to comply with the conditions of her leave outlined in the April 5 letter. (*Id.* ¶ 46.)

In a letter dated June 7 and signed by DiMango, Columbia informed plaintiff that her employment was terminated effective that date. (Ex. R.) Specifically, DiMango reiterated that Geromanos had told her and Marte–Miraz that she had been working a second job. She noted that plaintiff had been "put on disability status because of the assessment of your healthcare provider that you were unable to work." In addition, "We have been informed that you have not complied with the conditions outlined in my April 4th letter to you in that you have not submitted weekly progress reports to the Return to Work Program. Because of this your employment as a Research Nurse at Columbia will be terminated effective today." (*Id.*)

At plaintiff's request, her termination was extended by the number of days of vacation leave she had remaining. Thus, plaintiff continued to receive her full salary and medical coverage until July 24, 2002, over a month after her FMLA leave expired (on June 11).

## II. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment will be granted only if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is the nonmoving party's burden to "demonstrate to the court the existence of a genuine issue of material fact." *Lendino v. Trans Union Credit Information Co.,* 970 F.2d 1110, 1112 (2d Cir.1992). In opposing summary judgment, a party may not rest upon unsupported allegations or denials, or simply claim without support that evidence advanced by the movant in support of the motion is not credible. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801–802 (2d Cir.1992).

### B. The Family Medical Leave Act

FMLA was enacted because Congress believed "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods. . . ." 29 U.S.C. § 2601(a)(4). FMLA therefore provides employees with certain substantive rights with which employers cannot interfere. *Sarno v. Douglas–Elliman,* 183 F.3d 155 (2d Cir.1999). The Act provides eligible employees the right to take unpaid leave for up to twelve weeks for a serious medical condition as defined by the Act. 29 U.S.C. § 2612(a)(1). It further provides that at the end of that leave the employee is entitled to reinstatement to the former position or an equivalent position. 29 U.S.C. § 2614(a). To ensure the availability of these rights, section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Therefore, em-

ployers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c).

In this case, Plaintiff alleges that Columbia interfered with her rights under FMLA in violation of 29 U.S.C. § 2615(a)(1) by terminating her employment while she was on medical leave for reasons that violate the act. Specifically, plaintiff argues that Columbia interfered with her rights by 1) failing to inform her of her FMLA rights; 2) failing to inform her she was being placed on FMLA leave; 3) requiring plaintiff to submit weekly progress reports while on leave; and 4) terminating plaintiff for failing to provide the reports and for working a second job. (Pl.Mem., 1.) Plaintiff, through counsel, specifically disavowed any claim that Columbia retaliated against plaintiff for the exercise of her FMLA leave. (Pl. Tr. 195:24–196:4.) Thus, in the first instance, I must analyze this case as one for interference, even though parts of it fall more logically under the rubric of retaliation.

Columbia has moved for summary judgment on the grounds that plaintiff has failed to establish a prima facie case for interference. Columbia asserts that it did not interfere with plaintiff's rights under FMLA, since Geromanos received all of the leave to which she was statutorily entitled (12 weeks). Plaintiff avers that she has indeed established a prima facie case and that issues of fact prevent summary judgment.

I conclude that Plaintiff has not presented sufficient evidence from which a reasonable jury could find that her rights under FMLA were violated. Geromanos did in fact receive her entire FMLA entitlement (twelve weeks), in addition to benefits beyond those required by FMLA. And there is no evidence that she was discharged for

taking FMLA leave. Defendant's Motion for Summary Judgment is granted.

## C. Plaintiff Has Failed To Establish A Prima Facie Case For Interference

■ To make out a prima facie case on a claim for interference with FMLA rights under 29 U.S.C. § 2615(a)(1), a plaintiff must establish five elements: 1) that she is an eligible employee under the FMLA; 2) that defendant is an employer as defined in FMLA; 3) that she was entitled to leave under FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under FMLA. (Def. Mem., 10–11 citing *Santos v. Knitgoods Workers' Union, Local 155,* No. 99 Civ. 1499, 1999 WL 397500 at *3 (S.D.N.Y. June 15, 1999), *aff'd,* 252 F.3d 175 (2d Cir.2001)); *see also Mayo v. Columbia University,* No. 01 Civ.2002, 2003 WL 1824628, *8 (S.D.N.Y. April 7, 2003); *Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.,* No. 00 Civ. 5207, 2002 WL 1059117 (S.D.N.Y. May 28, 2002).

Plaintiff has failed to establish a prima facie case because there is no evidence that Columbia denied her any benefits to which she was entitled under FMLA. *See Santos,* 1999 WL 397500 at *3. FMLA grants employees two distinct rights: the right to take leave for the treatment of a serious health condition (29 U.S.C. § 2612(a)(1)) and the right to be reinstated to the former position or an equivalent position at the end of leave. 29 U.S.C. § 2614(a). Plaintiff received over twelve weeks of paid leave from Columbia, and plaintiff had no right to reinstatement because she was incapable of performing the essential functions of her position at the end of the twelve weeks. Therefore, plaintiff's complaint must be dismissed.

1. *Plaintiff Received all of the Leave to Which She was Entitled*

■ FMLA entitles an eligible employee to take "a total of 12 workweeks of leave during any 12–month period ... [b]ecause of a serious health condition...." The law does not require an employer to pay the employee during that period. 29 U.S.C. § 2612(a)(1)(D).

Plaintiff's paid leave from Columbia began on March 19, 2002 and ended on July 24, 2002—the date she was last on the payroll. Pursuant to Columbia policy, her leave was automatically designated as FMLA leave beginning on March 19. The twelve week period expired on June 11, 2002. Thus, plaintiff took and received over twelve weeks of leave, despite any infractions that may have entered into the decision to dismiss her, and despite the fact that she could not resume her nursing job at the end of her twelve weeks because she was still unable to work (according to her treatment provider) and because she had agreed to surrender her license.

The fact that Geromanos received the letter ending her employment on June 7, four days prior to the expiration of the twelve week period that could have qualified as FMLA leave is of no consequence. In *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir.2000), the Second Circuit affirmed the district court's grant of summary judgment for the employer, and determined that the plaintiff had not been fired while on FMLA leave, even though she received the termination letter before her FMLA leave expired, because the employer subsequently extended plaintiff's termination date to account for accrued vacation time. In this case, Columbia also extended plaintiff's termination date from June 7 until June 11 and beyond, to account for unused vacation time, and it is that second date

that is relevant for FMLA purposes. Thus, assuming that plaintiff was entitled to be on FMLA leave until June 11, plaintiff received the entire twelve weeks to which she was entitled.

In fact, plaintiff may have received more leave than she was entitled to by statute. Pursuant to C.F.R. 825.114(d), "FMLA leave may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider." But plaintiff was dismissed from her program—without clearance to return to work—on May 23, prior to the expiration of twelve weeks. Plaintiff has presented this Court with no evidence that she entered a new treatment program. Therefore as far as I can tell, plaintiff was not entitled to FMLA leave after May 23.[2]

■ The fact that plaintiff was notified of her termination during her leave does not constitute interference. The law is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination. *Santos*, 1999 WL 397500 *at \*3*; *Mayo*, 2003 WL 1824628, at \*8. There is no evidence in the record that would support a finding that Columbia terminated plaintiff because she took FMLA leave. (*see infra*, D.)

Because plaintiff received the full twelve weeks of leave as allowed by the act, the only other right with which Columbia could be found to have interfered is the right to reinstatement at the end of her leave.

2. *Plaintiff was not Entitled to Reinstatement*

■ The right to reinstatement under FMLA is not absolute. *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799,

---

**2.** I note that Columbia does not advance this argument.

804 (7th Cir.2001). FMLA was not intended to provide employees with a greater right to reinstatement or other benefits than they would have had if they had been continuously employed during the FMLA leave period. *Santos,* 252 F.3d at 178 (citing 29 C.F.R. § 825.216(a)(1)("if an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave ... cease[s] at the time the employee is laid off.")); *Sarno,* 183 F.3d at 161–162 (right to reinstatement not affected by lack of notice because the serious health condition for which he took leave remained for two months after leave expired); *see also Allen v. Hebrew Academy of Nassau County,* No. 98 Civ. 673, 2000 WL 1919478 (E.D.N.Y.2000); *Carrillo v. National Council of Churches,* 976 F.Supp. 254, 256 (S.D.N.Y.1997). As noted in *McCown v. UOP, Inc.,* No. 94 Civ. 2179, 1995 WL 519818, at *7 (N.D.Ill. Aug. 30, 1995), "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave."

■ The evidence in this case clearly supports Columbia's argument that plaintiff was not entitled to reinstatement at the conclusion of her leave because she was unable to perform the essential duties of her employment.

First, plaintiff's continued employment was conditioned upon her completion of an accredited treatment program and the submission of weekly progress reports. The evidence shows that plaintiff did *not* satisfactorily complete the treatment program; indeed she was dismissed from the program on May 23, 2002. Her counselor believed she ought to be treated in an in-patient program, but plaintiff offers no evidence that she ever entered an in-patient program, or that she completed any treatment program by June 11, the date her FMLA leave expired. Moreover, during her leave she suffered several relapses, and her counselor wrote that she was not capable of returning to the workforce.

Second, plaintiff's short-term disability form indicated that she would be unable to return to work until August 8—almost two months after her FMLA leave expired. Thus, plaintiff was not available to return to work at the end of her FMLA leave. Employees who are unable to work at the end of FMLA leave may be discharged. *See Sarno,* 183 F.3d at 161; *Clark v. New York State Elec. & Gas Corp.,* 67 F.Supp.2d 63, 80 (N.D.N.Y.1999); *see also Hatchett v. Philander Smith College,* 251 F.3d 670, 677 (8th Cir.2001); 29 C.F.R. §§ 825.216(d), 825.214(b).

Plaintiff suggests that if Columbia had communicated with her or her doctor, the date on her form might have been changed. However, both the available evidence and applicable law suggests otherwise. Plaintiff offers not a shred of evidence that she was sufficiently in control of her alcohol addiction to go back to nursing in mid-June. And in *Rogers v. New York University,* 250 F.Supp.2d 310 (S.D.N.Y.2002), this Court determined that NYU reasonably relied on the plaintiff's doctor's assessment that the plaintiff would not be able to return to work for another month or two, even though her personal therapist believed she might be able to return to work and had left messages with NYU that she disagreed with the doctor's assessment. Thus, Columbia could reasonably have relied on the Nyack treatment form—submitted just a few weeks before plaintiff's FMLA leave expired—which indicated that plaintiff would not be able to return to work until August 8. Plaintiff acknowledged that she did not ask her treatment provider to change the

return to work date because she knew she could not return to work, even in August, because of licensure issues. (Geromanos Tr., 169:6–20.)

Third, and most significant, in an April conference call with McAllister and a representative of the State Education Department, Geromanos was informed that she would need to apply for the professional assistance program in order to resume practicing nursing. She agreed to do so and understood that she would need to surrender her license through that program. (Geromanos Tr. 228:9–25.) In May, both plaintiff and defendant were aware that plaintiff's license would likely not be reinstated until October. (*Id.* 175:12–18.)

Prior to her leave, plaintiff spent approximately 75% of her time providing direct patient care. Without a license, plaintiff was unable to treat patients—one of the essential duties of her position. Under C.F.R. § 825.214(b), if the employee is "unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." Thus, plaintiff was not entitled to reinstatement. *See Sarno,* 183 F.3d at 161 (Failure to restore employee to his position at the end of 12–week period did not infringe his FMLA rights where it was undisputed that at the end of that period he remained unable to perform the essential functions of his position); *Allen,* 2000 WL 1919478 at *6; *Clark,* 67 F.Supp.2d at 66.

Because plaintiff received all of the leave to which she was entitled, and she was not entitled to reinstatement, there is no evidence that Columbia interfered with the rights granted her under FMLA.

3. *Neither Columbia's Failure to Notify Plaintiff That her Leave was Classified as FMLA Leave Nor Requiring the Submission of Weekly Treatment Reports Constitutes Interference*

a. Failure to notify plaintiff that leave was classified as FMLA leave does not constitute interference because plaintiff received all of the leave to which she was entitled.

■ Relying on *LaCoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 230 (S.D.N.Y.1997), plaintiff argues that defendant's failure to notify her of her rights under FMLA constitutes improper interference. Plaintiff is incorrect. Failure to notify an employee of FMLA procedures does not, in and of itself, constitute an interference with the exercise of those rights.

In *LaCoparra,* this court held that failure to provide employees with adequate notice of FMLA procedures may constitute interference with an employee's FMLA rights, *if the lack of notice caused the employee to forfeit FMLA leave.* 982 F.Supp. at 220. However, the right to notice under the act is not an independent right giving rise to suit where failure to notify in no way affected the employee's leave. *Sarno,* 183 F.3d at 162. *See also Stephens v. Thomas Pub. Co., Inc.,* 279 F.Supp.2d 279, 285 (S.D.N.Y.2003) (Employee's rights under FMLA were not violated where she received her entire FMLA entitlement of twelve weeks leave and indeed received benefits beyond those required by statute).

In this case, plaintiff did not forfeit her FMLA leave. Moreover, it appears plaintiff did have notice of Columbia's policy concerning FMLA leave, which appears in Columbia's online employee handbook. (Ex. L). Assuming arguendo that plaintiff did not receive proper notice, she fails to

make out a claim for interference based on lack of notice, because she fails to explain how the lack of notice affected her ability to take leave. The law does not require Columbia to notify plaintiff formally that it was designating plaintiff's leave as FMLA leave at the outset. *See Fulham v. HSBC Bank USA*, No. 99 Civ. 11054, 2001 WL 1029051 (S.D.N.Y. Sept. 6, 2001) (employer's failure to notify plaintiff that considering leave as FMLA leave did not waive employer's right to characterize it as such).

 b. Columbia's request for progress reports on plaintiff's treatment does not violate the Act

 FMLA permits an employer to require that employees substantiate a request for leave for treatment of a serious health condition by submitting a medical certification issued by the health care provider. FMLA also allows the employer to require subsequent recertifications on a reasonable basis. 29 U.S.C. § 2613. Although the Act does not specify what constitutes a reasonable basis, the regulations implementing FMLA provide that an employer "may request recertification at any reasonable interval, but not more often than every 30 days, unless: (1) The employee requests an extension of leave; (2) Circumstances described by the previous certification have changed significantly (e.g., the duration of the illness, the nature of the illness, complications); or (3) The employer receives information that casts doubt upon the continuing validity of the certification." C.F.R. § 825.308(c). This limitation prevents employers from requiring plaintiffs to repeatedly prove that they do in fact suffer from a serious health condition entitling them to leave.

In this case, whether plaintiff actually suffered from a serious health condition does not seem to have been questioned by Columbia, which in fact *recommended* that plaintiff take leave to receive treatment. There is absolutely no evidence that Columbia ever questioned plaintiff's illness.

By the terms of Columbia's April 5 letter, plaintiff was required to submit weekly progress reports on her treatment if she attended an out-patient treatment center, and monthly reports if she attended an in-patient program. Plaintiff argues that the weekly reporting requirement interfered with her leave because the progress reports concerning her treatment were certifications, which, under C.F.R. § 825.308, an employer cannot request more than every thirty days. Thus, plaintiff contends that Columbia's decision to terminate her employment for failure to provide the reports constitutes a per se violation of FMLA.

In reply, Columbia avers that the reports were not certifications. Columbia argues that plaintiff would have been terminated for failure to submit these reports regardless of whether she was on FMLA leave. The reports were required to ensure that plaintiff was actually undergoing treatment, which was a condition of both receiving full salary while on leave and continued employment after its expiration (the expiration of her disability leave, not her FMLA. (Def.Mem., 21–22.)

The case law regarding recertification is sparse. Plaintiff was able to find one case in which the District Court for the Northern District of Illinois concluded that requiring an employee on leave to submit a letter every two weeks "supporting" her "charge of a disability" could be viewed as an impermissible recertification under C.F.R. § 825.308(c). *LeGrand v. Village of McCook*, No. 96 Civ. 5951, 1998 WL 182462 (N.D.Ill. April 15, 1998).

 However, Columbia did not ask plaintiff to certify on a weekly basis that

she continued to be an alcoholic as a condition to allowing her to remain on FMLA leave. Indeed, there is no evidence that Columbia ever intimated that plaintiff was not entitled to be on FMLA leave, which is the concern that limiting recertification is intended to address. Rather, Columbia requested that plaintiff prove she was cooperating with the terms of her paid leave of absence by undergoing treatment. Since Congress did not require FMLA leave to be paid leave, Columbia was free to impose whatever conditions it chose as a condition of continuing plaintiff's salary while she was not working—including the provision of reports detailing her cooperation with and progress in the substance abuse program she was attending.

Moreover, given the nature of alcoholism, the difficulty of treating the disease and the "flexibility" of out-patient programs, it was reasonable that Columbia would seek assurance that plaintiff was complying with what was effectively a "last chance" agreement under which plaintiff would be allowed to retain her position. In *Mayo v. Columbia University*, 2003 WL 1824628 (S.D.N.Y. April 7, 2003), Judge McKenna of this court concluded that Columbia had not violated the ADA (or FMLA) when it fired Mayo for failing to comply with the terms in his return to work agreement—an agreement identical to the one at issue in this case. Because violation of the agreement constituted a valid, non-discriminatory reason for terminating plaintiff, and plaintiff failed to show, as required by *McDonnell Douglas*, that the reason was pretextual, plaintiff's ADA claim was dismissed. *Id.* at *7. Plaintiff's claim for denial of benefits under FMLA § 2615(a)(1) was also dismissed—without discussion of the certification issue—on the ground that terminating plaintiff during his FMLA leave did not constitute an impermissible interference in violation of the act. *Id.* at *8. Although Judge McKenna did not address the recertification issue, it is clear that failure to abide by the terms of the agreement is a legitimate grounds for terminating an employee on FMLA leave.

Plaintiff further argues that she was entitled to work while on FMLA leave, and Columbia's refusal to allow her to work elsewhere violates the act. But, as noted above, Columbia was not required to give plaintiff *paid* FMLA leave, so it was free to impose conditions on matters like outside work as a condition of providing Geromanos with paid leave.[3] Plaintiff received leave because she was certified as being disabled and unable to work until August 8. If she could work, then per Columbia's policy she was not entitled to paid leave.

The cases cited by plaintiff—none from this circuit—do not hold otherwise. Even in *Williams v. Rubicon*, 754 So.2d 1081 (La.App.1999) (the case cited that is most favorable to plaintiff), the Louisiana Court of Appeals recognized that FMLA does not prevent an employer from terminating an employee on leave for violating company policy. (*Id.* at 1085). Nonetheless, that court concluded that the employer had failed to honor its employee's substantive rights under FMLA because it terminated the employee for volunteering with the Red Cross while on leave (claiming a violation of company ethics) without following the certification procedures which should be employed if there is doubt that an employee suffers from a serious medical condition. (*Id.*) In this case, Columbia has not disputed that plaintiff suffered from a serious medical condition.

---

3. This is hardly uncommon. Many public agencies, for example, the New York Fire and Police Departments, require that members who are paid disability leave refrain from working elsewhere while on leave.

Thus, Columbia's decision to terminate plaintiff—in part due to her work as a Lamaze instructor—is not a per se violation of FMLA, and does not constitute interference with her right to leave.

There is, of course, an issue of fact concerning whether plaintiff was aware of the no-work policy. But that is of no moment. The University had a right to place whatever restrictions it chose on the conditions of its program for paid leave, and its decision to limit plaintiff's ability to work while ostensibly disabled was not contrary to FMLA.

4. *No Issues of Fact Preclude Summary Judgment on Plaintiff's Interference Claim*

Plaintiff contends that there is an issue of fact concerning the sending of reports from Nyack, which allegedly motivated her termination. However, I see no issue of fact. Although plaintiff includes in the record copies of weekly reports, she proffers no competent evidence that they were in fact sent to Columbia.

First, all fax machines imprint transmitted pages with a legend indicating that they were in fact transmitted. None of the reports submitted by plaintiff, including the post-May 4th reports, bears any legend across the top of the page indicating that it was actually sent. Without that legend, it is not possible to infer that they were in fact sent—unless the sender gives testimony. But plaintiff has not submitted any affidavit or competent evidence from the person who supposedly sent the reports attesting that they were in fact sent to Columbia.

Second, Columbia's avowed non-receipt of the reports is confirmed by the fact that

it did not discharge plaintiff for failing to complete her treatment program. If these reports had in fact been sent to Columbia on or about the date they were ostensibly prepared, defendant would simply have discharged plaintiff for failing to complete rehab—a clear and unmistakable violation of the conditions of continued employment.

As there are no issues of fact preventing summary judgment, and plaintiff received all the FMLA benefits to which she was entitled, defendant is entitled to summary judgment on plaintiff's claim that Columbia interfered with her rights in violation of § 2615(a)(1). Nonetheless, I will also consider whether plaintiff has articulated any claim for retaliatory discharge.

**D. Plaintiff Also Fails to Articulate A Claim For Retaliation**

█ A wrongful discharge claim brought under § 2615(a)(1) is properly analyzed not as a claim for interference, but as a claim for retaliation, subject to the *McDonnell Douglas* burden shifting standard. *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.2004). In this case, it may be more appropriate to analyze plaintiff's case as stating a retaliation claim (as plaintiff's counsel has done in the brief). Unfortunately for plaintiff, even were I to assume she intended to plead a case for wrongful discharge under § 2615(a)(1), her counsel's prior disclaimer notwithstanding [4], she has failed to establish a prima facie case under the standard set forth in *Potenza*.

█ In order to establish a prima facie case for retaliation under § 2615(a)(1), plaintiff must prove that: 1) she exercised rights protected under the FMLA; 2) she was qualified for the position; 3) she suf-

---

**4.** During plaintiff's deposition, her counsel stated, "[j]ust for the record, we're not claiming a retaliation. We're claiming interfer-

ence, just so you know. There is no issue for retaliation." (Pl. Tr. 195:24–196:4.)

fered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id.* at 168. Geromanos has failed to establish either the second or fourth elements of this standard.

■ Most significantly, plaintiff has not established the fourth element because her own testimony belies it. She testified under oath at her deposition that she believed she was fired because of the March 18 incident and for the reasons stated in the June 7th letter, namely that she had failed to submit the progress reports and because she was working a second job. (Geromanos Tr. 194:11–195:20.) Not surprisingly, it was after this statement that her lawyer indicated plaintiff was not bringing a claim for retaliation. (*See* note 4.) Thus, plaintiff conceded that there is no causal connection between Columbia's decision to terminate her position and the exercise of her FMLA rights, and any claim for retaliation must fail.

Additionally, plaintiff was not qualified to return to her job at the end of her leave, as the second element requires. (*Supra,* C.2). Not only did plaintiff's psychiatrist indicate that plaintiff would not be able to return to work until August 8 (almost two months after her FMLA leave expired), but plaintiff agreed in April to voluntarily surrender her nursing license and did not expect to have it reinstated—nor was it reinstated—until October.

Therefore, even assuming plaintiff intended to claim that Columbia retaliated against her, she has failed to establish a prima facie case under *Potenza,* and Columbia is entitled to summary judgment.

## III. CONCLUSION

Columbia's motion for summary judgment is granted, and the complaint is dismissed. The Clerk of the Court is directed to close the file.

This constitutes the decision and order of the Court.