Celeste HILL, Plaintiff,

v.

The NEW YORK CITY HOUSING
AUTHORITY, Defendant.

No. 15 Civ. 8663 (CM)

United States District Court,
S.D. New York.

Signed November 14, 2016

Casimir Joseph Wolnowski, Nicole Ann Welch, Steven John Fingerhut, Alex Umansky, Phillips & Associates, Attorney at Law, PLLC, New York, NY, for Plaintiff.

Nabiha Rahman, Jane Elizabeth Lippman, New York City Housing Authority, New York, NY, for Defendant.

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

McMahon, Chief Judge:

Defendant New York City Housing Authority ("NYCHA" or "Defendant") has moved for summary judgment on Plaintiff Celeste Hill's ("Plaintiff") claims for retaliation and interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and disability discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8–107.

Defendant argues that Plaintiff was fired from her position as a Housing Assistant for NYCHA because of her well-documented unsatisfactory work performance, and that Plaintiff has not raised any genuine issue of material fact to the contrary.

For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

**BACKGROUND**

**I. Plaintiff's Work History**

Plaintiff began working for NYCHA on May 13, 2002, as a City Seasonal Aide. (Def.'s Rule 56.1 Statement ¶ 11) On September 9, 2002, Plaintiff was appointed to the civil service title of Community Associate at the Department for Social Services, Bronx Social Services. (*Id.* ¶ 12)

In October 2004, after a local disciplinary hearing, Plaintiff was found guilty of two charges of incompetency and/or misconduct for creating a disturbance and physical altercation at work, and she was reprimanded. (*Id.* ¶¶ 13–14) Her record thereafter was good until 2011, when she received the first of two "counseling memoranda" for poor work performance and insubordinate behavior. She received a second such counseling memorandum in 2013, along with "instructional memoranda" for leaving her work place without authorization. (*Id.* ¶¶ 15–17)

Despite these lapses, having passed the qualifying civil service examination, Plaintiff was appointed to the civil service title

of Housing Assistant on October 6, 2014. (*Id.* ¶ 18)

Because Plaintiff was appointed to a "Competitive Class" civil service title, she was on probationary status for one year, subject to quarterly ratings of her performance. (*Id.* ¶ 19) Plaintiff's probationary status meant that she could be fired during her probationary period without a pre-termination hearing, pursuant to New York Civil Service Law Section 75. (*Id.* ¶ 20) Plaintiff knew, when she began working as a Housing Assistant, that for the first year she was on probation and could be fired if her quarterly evaluations were unsatisfactory. (*Id.* ¶ 21)

As a Housing Assistant, Plaintiff's job duties included assisting with issues regarding tenancy and non-payment of rent, testifying in court, preparing reports and collecting housing data, and assisting with tenant complaints. (*Id.* ¶ 26) Plaintiff had several days of training during October, November, and December 2014. (*Id.* ¶ 27) Throughout her tenure as a Housing Assistant, Plaintiff's colleagues and supervisors provided assistance and instruction. (*Id.* ¶ 28) In addition, an experienced Housing Assistant from another NYCHA development provided training to Plaintiff. (*Id.* ¶ 61)

Plaintiff was assigned to Justice Sonia Sotomayor Houses ("Sotomayor Houses"), a NYCHA development in the Bronx. (*Id.* ¶ 18) Plaintiff's immediate supervisor at Sotomayor Houses was Joy Zackary ("Zackary"), the Assistant Housing Manager. (*Id.* ¶ 22) Gene Palumbo ("Palumbo") was the Housing Manager at Sotomayor Houses and Zackary's supervisor; Plaintiff also reported to Palumbo. (*Id.* ¶¶ 23, 24)

Zackary prepared Plaintiff's quarterly ratings, and Palumbo reviewed them and provided input. (*Id.* ¶ 34) Quarterly interim ratings can be either "satisfactory" or "unsatisfactory." (*Id.* ¶¶ 30–31) The quarterly ratings form for a probationary employee is sent to the manager by Human Resources and reflects the employee's date of assignment and the date the completed form is due. (*Id.* ¶ 32) Although a quarterly rating reflects a due date set by Human Resources, a manager may submit it at any time if he or she has enough information to complete the evaluation. (*Id.* ¶ 33)

Palumbo usually gives a satisfactory rating for an employee's initial evaluation "because we give them a time to ramp up, to learn a little something because we [cannot] expect them to know the job and to actually make any significant contribution to the operation of the office." (*Id.* ¶ 35) Plaintiff's first quarterly evaluation in December 2014 was satisfactory. (*Id.* ¶ 37)

Her second was not.

In March 2015, Plaintiff received three counseling memoranda from Zackary for issues related to poor performance and failure to accomplish tasks in a correct and timely manner. (*See id.* ¶¶ 38–47) Plaintiff's second quarterly evaluation, signed by Zackary and Palumbo on March 30, 2015, was unsatisfactory. It included the following comments: "Employee has not exhibited the ability to comprehend instruction to correct mistakes in her work"; "Employee has failed to meet deadlines on several occasions"; "Employee has to be reminded several times to complete assignments"; and "Employee needs minute to minute instruction and unattentive when given instruction." (*See id.* ¶¶ 48, 49; Ex. 11) At the time he gave Plaintiff her second quarterly evaluation, Palumbo told Plaintiff that she needed to improve her work performance and to follow directions. (Def.'s Rule 56.1 Statement ¶ 50)

Plaintiff knew that, when she received her second quarterly evaluation, her supervisors were unhappy with her work and

that she could be fired because she was on probation. (*Id.* ¶ 51)

Obviously, Plaintiff's performance did not improve, because on May 14, 2015, Palumbo asked Melania Allen ("Allen"), Director of the Bronx Borough Management Department, to remove Plaintiff from her position, effective immediately. (*Id.* ¶ 52) On May 26, 2015, Palumbo emailed Derek Powell ("Powell"), the Bronx Borough Deputy Director, to follow up on his May 14 request; he emphasized the need to remove Plaintiff from her Housing Assistant position "ASAP," stating in the email, "This HA [Housing Assistant] MUST go!" (*Id.* ¶ 53) Plaintiff was not, however, removed.

Plaintiff received two more counseling memoranda dated June 3, 2015, this time for failure to complete her work and misconduct. (*See id.* ¶¶ 54–67) One of the June 3 counseling memoranda concerned an incident when Plaintiff stated, in the presence of Zackary and the Assistant Resident Buildings Superintendent Joel Parrish, that Palumbo was an idiot and she wanted to "smack" him. (*Id.* ¶ 54) Plaintiff claims that her actual words were that Palumbo "made me feel like an idiot, I feel like pimp slapping him." (*Id.* ¶ 55) However, the difference is immaterial; Plaintiff's reference to "pimp slapping" violated NYCHA's violence in the workplace policy. (*Id.* ¶ 59; Ex. 15; Ex. 31)

In addition to receiving counseling memoranda from Zackary, Palumbo had discussions with Plaintiff "where [he] would explain to her where her behavior was not professional; where her performance was less than satisfactory; and where . . . the way she comported herself in the office was not acceptable." (*See* Def.'s Rule 56.1 Statement ¶¶ 68–69)

On June 4, 2015, Allen asked Kenya Salaudeen ("Salaudeen"), the NYCHA Human Resources Director, to demote or reassign Plaintiff. (*Id.* ¶ 70) The next day, Marla Edmonson ("Edmonson"), the Probation and Hearing Coordinator for the NYCHA Human Resources Department, advised the Bronx Borough Property Management Department that Plaintiff could not be demoted or reassigned because of her civil service status; she would have to be fired. (*Id.* ¶ 71) Allen asked Palumbo to complete Plaintiff's third quarter ratings before she made a final decision about firing Plaintiff. (*Id.* ¶ 72) On a telephone call, Palumbo and Allen discussed the reasons for Plaintiff's termination; Palumbo explained that the two counseling memoranda issued to Plaintiff on June 3, 2015 involved separate events that occurred on different days. (*Id.* ¶ 73)

On June 12, 2015, Palumbo signed Plaintiff's third quarter rating, which was prepared by Zackary. Needless to say, it was "unsatisfactory." (*Id.* ¶ 74) Zackary's comments on Plaintiff's third quarter rating reflected Plaintiff's inability to do her work and her inappropriate behavior: "Employee needs minute to minute instructions"; "Employee lacks the ability to complete simple tasks without errors"; "Employee's work has to be corrected constantly"; "Employee has loud tirades when given instruction or assignments"; "Employee has not met any deadline given to her"; "Employee does not have the ability to be an effective housing assistant"; and "Her inability to perform her duties as a housing assistant causes a disservice to the residents of NYCHA." (Ex. 11)

Plaintiff's supervisors could not give her the third quarterly evaluation, however, because she called in sick on June 12. Three days later, on June 15, Plaintiff asked to take FMLA leave between June 15 and July 22, due to a serious health condition that she identified as depression. (Def.'s Rule 56.1 Statement ¶ 76) Plaintiff's therapist noted, during Plaintiff's visit on

June 15, 2015, that Plaintiff "is worried [she] is going to be fired from her job. She feels her supervisor doesn't like her and [h]as [sic] it in for her." (*Id.* ¶ 77; Ex. 34)

Palumbo returned from vacation on June 22; by that time, Plaintiff was already on FMLA leave. (Def.'s Rule 56.1 Statement ¶¶ 75, 78) Palumbo emailed Plaintiff's unsatisfactory third quarterly evaluation to Powell, along with Plaintiff's FMLA leave request, which he had "disapproved." (*Id.* ¶ 78; Ex. 21) Palumbo believed that Plaintiff had been absent without official leave when she began her FMLA leave, because (1) her request had not yet been granted by Human Resources, and (2) she failed to call her supervisor each day. (Def.'s Rule 56.1 Statement ¶ 79) In his email to Powell, Palumbo wrote that, "Ms. Hill also submitted a FMLA request which I disapproved since she was AWOL on the day she was to be served the evaluation 6/12/15." (Ex. 21)

Palumbo, as he himself recognized in his testimony, had no power to approve or disapprove an FMLA leave request; that was a decision for Human Resources. Palumbo objected to granting Plaintiff's FMLA leave because "she didn't have kind of supporting documentation, the doctors letters. She is not following the proper protocol. . . . But it was not mine to approve or disapprove, so I just forwarded it to the proper channels. Eventually she followed the correct channels and got her FMLA approved but that only comes from Human Resources." (Ex. 7 at 133:12–134:3) As Palumbo noted, "[T]he manager's role is to collect the documentation at that [initial] point, and to forward it to the borough director." (*Id.* at 135:8–135:11)

Notwithstanding Palumbo's position, on June 24, 2015, the NYCHA Human Resources Department informed Plaintiff that she had been approved for paid FMLA leave between June 15, 2015 and July 22, 2015. (Def.'s Rule 56.1 Statement ¶ 83)

But that did not bar NYCHA from firing her. Edmonson told Palumbo that Plaintiff could be fired for her unsatisfactory performance, even though she was out on FMLA leave. (*Id.* ¶ 81) Palumbo had several conversations with Powell about Plaintiff's termination, and Powell agreed that she should be fired. (*Id.* ¶ 90)

Therefore, on June 30, 2015, Allen asked Salaudeen for permission to fire Plaintiff. (*Id.* ¶ 85) She was fired on July 14, 2015. (*Id.* ¶ 87)

The message that termination was under consideration failed to reach the lower levels in Human Resources, however; on July 8, 2015, Wendy Alexander, an Assistant Director in the NYCHA Human Resources Department, sent Plaintiff a letter informing her that her approved FMLA leave would end on July 22, 2015, and advising that, if she wished to extend her leave, she had to submit a written request for an extension and an updated medical letter from her doctor. (*Id.* ¶ 86) Plaintiff did not submit anything prior to July 14, when she was fired. (*Id.* ¶ 87)

## II. The Instant Litigation

In her amended complaint filed on December 3, 2015, Plaintiff alleges that "based on the close temporal proximity between Defendant being notified that [she] suffered from major depression and Defendant's decision to terminate [her] employment, it is clear that Defendant terminated [her] employment due to [her] disability." (Am. Compl. ¶ 24) Plaintiff claims that, "But for the fact that [she] was disabled and exercised her rights under the FMLA, Defendant would not have terminated her employment." (*Id.* ¶¶ 28, 39)

In her response to Defendant's Rule 56.1 Statement, Plaintiff claims that the following evidence supports her discrimination claim and defeats the motion for summary judgment: (1) "The unsubstantiated third quarterly evaluation which Defendant NYCHA never reviewed with Plaintiff"; (2) "Correspondence from Mr. Palumbo to HR asserting that he would provide training but then requesting her termination immediately upon learning of her FMLA request"; and (3) "Mr. Palumbo's attempt to disapprove Plaintiff's FMLA request without any authority to do so, and then his subsequent deposition testimony, denying his actions." (Pl.'s Resp. to Def.'s Rule 56.1 Statement ¶ 101)

Plaintiff also claims that she only worked four days during May 2015, while serving on jury duty, and only six and a half days during June 2015. (Pl.'s Statement of Material Facts ¶¶ 31–33) Plaintiff argues that her "scarce attendance record during her third probationary quarter further highlights the actual reason for her termination—her FMLA request." (Pl.'s Br. at 16)

## DISCUSSION

### I. Standard

A motion for summary judgment shall be granted if the moving party can show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the evidence], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citations omitted).

The Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Gibson v. Am. Broad. Cos., Inc.*, 892 F.2d 1128, 1132 (2d Cir. 1989). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. FMLA Claims

FMLA gives eligible employees an "entitlement" to twelve work weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1). While an employee is on FMLA leave, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1); *see also Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 534 (S.D.N.Y. 2009).

Plaintiff alleges two causes of action under the FMLA: (1) interference with FMLA rights and (2) retaliation for exercising her FMLA rights. Neither has merit.

### III. Plaintiff's Claim for FMLA Interference

To establish an interference claim pursuant to 29 U.S.C. § 2615(a)(1), a plaintiff need only prove that an "employer in some manner impeded the employee's exercise of his or her right[s]" protected by the FMLA. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006); *Reilly*, 620 F.Supp.2d at 535. To establish a *prima facie* claim of interference with

rights under the FMLA, a plaintiff must establish, by a preponderance of the evidence, that: "(1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA." *Esser v. Rainbow Advert. Sales Corp.*, 448 F.Supp.2d 574, 580 (S.D.N.Y. 2006); *see also Reilly*, 620 F.Supp.2d at 535.

■ "[I]t is well-settled that an employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave." *Pearson v. Unification Theological Seminary*, 785 F.Supp.2d 141, 162 (S.D.N.Y. 2011). "FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Geromanos v. Columbia Univ.*, 322 F.Supp.2d 420, 429 (S.D.N.Y. 2004).

■ Moreover, "the FMLA does not prevent an employer from terminating an employee during a period of leave, so long as the taking of FMLA leave was not the cause for the termination. This is so because the FMLA does not entitle an employee taking an FMLA leave to any greater rights than employees who have not taken such leave." *Santos v. Knitgoods Workers' Union, Local 155*, No. 99 Civ. 1499, 1999 WL 397500, at *3 (S.D.N.Y. June 15, 1999); *see also Carrillo v. Nat'l Council of Churches of Christ*, 976 F.Supp. 254, 256 (S.D.N.Y. 1997).

■ In this case, Plaintiff "cannot establish that [she] was discharged for taking the leave or that it was a negative factor in [NYCHA's] decision to fire her." *Pearson*, 785 F.Supp.2d at 162 (internal quotation marks omitted). Not only is it evident that she was fired by NYCHA for unsatisfactory work performance that long preceded her FMLA leave request, "but there is not a scintilla of evidence for concluding that her 'leave' played any role in this employment decision." *Id.* The evidence makes clear that the decision to remove Plaintiff from her Housing Assistant position was made *before* she asked for FMLA leave on June 15, 2015; Plaintiff had received one unsatisfactory review in March 2015 and Palumbo began asking for permission to fire her in May. Furthermore, taking Plaintiff at her word, the illness that occasioned her FMLA leave—depression—was the result of her fear that she was about to be fired; Plaintiff's therapist documented her fear of being fired during her visit on June 15, 2015. (Def.'s Rule 56.1 Statement ¶ 77; Ex. 34) Therefore, Plaintiff has not demonstrated the necessary causal connection between her FMLA leave and termination.

Plaintiff argues that, "A genuine issue of material fact exists as to whether or not Mr. Palumbo would have resubmitted for Plaintiff's termination on June 22, 2015, had she not made an FMLA request." (Pl.'s Br. at 18–19) Plaintiff claims that "the documentary evidence produced by Defendant plainly reveals that Defendant made a decision *not* to remove Plaintiff before she requested FMLA leave. The request for Plaintiff's removal which resulted in her termination occurred subsequent to her FMLA request." (*Id.* at 18)

In support of these assertions, Plaintiff cites email correspondence dated June 9, 2015, in which Claudine John, a Housing Assistant, writes that "Ms. [Melania] Allen, our director reviewed the request for termination and was not in agreement— Ms. Allen would like the third quarter probation to be completed before a final decision is made. In addition, the issuance

of the two memos on June 3, 2015 was questioned." (Ex. G) Plaintiff also cites email correspondence dated June 22, 2015 between Palumbo and Powell, in which Palumbo sought guidance on how to proceed with Plaintiff's termination. (Ex. F) Finally, Plaintiff claims that the June 22, 2015 email further demonstrates Palumbo's interference with her FMLA rights, because Palumbo wrote the following: "Ms. Hill also submitted a FMLA request which I *disapproved* since she was AWOL on the day she was to be served the evaluation of 6/12/15." (*Id.* (emphasis added))

None of Plaintiff's proffered evidence creates a genuine issue of material fact, as her FMLA interference claim is predicated on a misreading of Allen's email and Palumbo's "disapproval" of her leave.

It is undisputed that Palumbo began the process of removing Plaintiff from her position as early as May 14, 2015. (Def.'s Rule 56.1 Statement ¶ 52) When Allen received Palumbo's email, she "was already convinced based on Mr. Palumbo's request for demotion/reassignment that Ms. Hill lacked the ability to perform the Housing Assistant position. But given that Ms. Hill was going to be terminated, I also wanted to review Ms. Hill's third quarter evaluation and to speak with Mr. Palumbo." (Allen Decl. ¶ 6) Shortly after sending her June 9 email, Palumbo and Allen had a telephone conversation, in which "Palumbo explained to [Allen] that he and his colleagues ... had made numerous attempts to train and assist Ms. Hill since she started working as a Housing Assistant in October 2014, and that Ms. Hill showed an utter lack of ability to perform the required tasks and also exhibited inappropriate behavior." (*Id.* ¶ 7) Based on that conversation, Allen "was satisfied that there were very strong grounds for Ms. Hill's termination"; she avers that, "Ms. Hill

was terminated solely for performance reasons." (*Id.* ¶¶ 7, 10)

Plaintiff's argument that Palumbo interfered with her rights based on his belief that she was "AWOL" is not evidence of interference with her FMLA rights; it is undisputed that only NYCHA Human Resources has the ability to approve or disapprove an FMLA leave request, and Human Resources did so despite Palumbo's indication that he would not have approved it, because Plaintiff did not initially follow "the proper protocol" with her paperwork and, therefore, failed to comply with NYCHA policy. (Ex. N at 133:10–16) There was no denial of Plaintiff's FMLA leave, so there was no "interference."

Thus, Defendant is entitled to summary judgment on Plaintiff's claim for FMLA interference.

## IV. Plaintiff's Claim for FMLA Retaliation

▆▆▆▆ FMLA prohibits employers from punishing employees in retaliation for exercising their FMLA rights. Employees have a private right of action against employers who punish them for exercising a FMLA right.

▆▆▆▆ FMLA retaliation claims include an intent element and are analyzed pursuant to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Reilly*, 620 F.Supp.2d at 537.

▆▆▆▆ To establish a *prima facie* retaliation claim under the FMLA, a plaintiff must show that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Reilly*, 620

F.Supp.2d at 537–38. Temporal proximity between a plaintiff's exercise of rights created by FMLA and adverse employment action can give rise to an inference of retaliation. *Id.* at 538.

"If the plaintiff establishes a *prima facie* case, there is a presumption of retaliation, and the burden shifts to the defendant to provide a legitimate nondiscriminatory reason for the termination. If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason for her termination was pretextual." *Nagel v. Cty. of Orange*, No. 09–cv–9960, 2013 WL 1285465, at *3 (S.D.N.Y. Mar. 28, 2013). For Plaintiff to defeat summary judgment, she "need not show that defendant's proffered reason was false or played no role in the decision to terminate [her], but only that it was not the only reason, and that h[er] filing for FMLA leave was at least one motivating factor." *Id.*

The temporal proximity cited by Plaintiff satisfies her Stage I *McDonnell Douglas* burden, but not her burden at Stage III. Plaintiff has not demonstrated that Defendant's legitimate, nondiscriminatory justification for her termination was merely pretextual. Defendant's justification—Plaintiff's poor work performance—is clearly well-documented, predates any application for FMLA leave, and is divorced from any retaliatory motive.

The evidence in the record—the five counseling memoranda and two unsatisfactory quarterly evaluations and correspondence between Plaintiff's supervisors—demonstrates that Plaintiff was not qualified for the Housing Assistant position. As early as May 14, 2015, NYCHA began the process of firing Plaintiff—a month before her eventual FMLA leave request. Plaintiff's supervisors were repeatedly dissatisfied with her work. Plaintiff herself was

aware of that and knew she could be fired during the one-year probation. Furthermore, her statements to her therapist establish beyond peradventure that she knew she was about to be fired.

"To defeat a motion for summary judgment, a plaintiff must do more than simply assert that the defendant's stated reason for [retaliating against] [her] was false; [s]he must also demonstrate that the [adverse employment action] was motivated by a discriminatory animus." *Nagel*, 2013 WL 1285465, at *8. Plaintiff has failed to meet this burden.

To establish the alleged pretext behind Defendant's justification, Plaintiff argues that, between the time of Palumbo's email on June 9, 2015 and her eventual firing on July 14, 2015, she only worked one and a half days and received no additional training during that time. (Pl.'s Br. at 13) Plaintiff claims that, "It is highly suspect [that] Mr. Palumbo would represent to HR his intention to give Plaintiff every opportunity to succeed over the following month, and then three ... days later sign a very general, unsatisfactory rating, and provide no specific examples to support the rating." (*Id.* at 14)

What Plaintiff fails to address is Palumbo and Allen's phone conversation following the June 9 email, which further demonstrates the shared understanding at NYCHA that Plaintiff was unqualified and had to be fired. It is undisputed that Plaintiff received extensive training in October, November, and December 2014, and received additional guidance from her supervisors and colleagues thereafter. It seems that none of it took.

Neither does the fact that Palumbo marked Plaintiff's request for leave "disapproved" suggest that she was fired in retaliation for exercising her FMLA rights. In fact, the whole issue of Plaintiff's taking

FMLA leave, for depression due to her fear of imminent firing, just at the moment when her employer was ready to pull the trigger, is a red herring. There is overwhelming evidence that Palumbo was greatly dissatisfied with Plaintiff's performance for many months prior to the date when Palumbo disapproved her request for FMLA leave; there is absolutely no evidence that he disapproved the request because she was trying to exercise her FMLA rights.

Therefore, Plaintiff has not met her burden to demonstrate that her firing was motivated by a desire to punish her for putting in for FMLA leave. Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim is granted.

## V. Plaintiff's NYCHRL Disability Discrimination Claims

■ Plaintiff has also asserted claims under the NYCHRL, N.Y. City Admin. Code § 8–107, for disability discrimination. Under the NYCHRL, it is "an unlawful discriminatory practice" for an employer to "refuse to hire or employ or to bar or to discharge from employment [an employee]" or to "discriminate against [an employee] in compensation or in terms, conditions or privileges of employment" on the basis of her disability. N.Y. City Admin. Code § 8–107(1)(a). Section 8–102(16)(a) of the NYCHRL defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment."

■ "[U]nder the NYCHRL, the burden is on the defendant to show that discrimination played *no* role in the employment action at issue. Nevertheless, courts have repeatedly noted that the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Gorman v. Covidien, LLC*, 146 F.Supp.3d 509, 532 (S.D.N.Y. 2015)

(internal quotation marks omitted) (collecting cases).

■ Claims under the NYCHRL are subject to *McDonnell Douglas* burden-shifting. *See Doe v. Major Model Mgmt. Inc.*, No. 11 Civ. 6182, 2012 WL 763556, at *10 (S.D.N.Y. Mar. 9, 2012). Plaintiff argues that "her termination was discriminatory and premised on her disability," and that Defendant's nondiscriminatory justification for her firing was pretextual. (Pl.'s Br. at 20) Defendant argues that, "although the NYCHRL may be broader than state and federal anti-discrimination law ... there is no evidence that NYCHA was motivated at all, let alone in part, by Plaintiff's disclosure of her depression" in her FMLA leave request. (Def.'s Br. at 17–18)

Defendant has proffered a legitimate, nondiscriminatory justification for Plaintiff's firing—her well-documented poor work performance that long preceded her request for FMLA leave and disclosure of her depression. (*See* Def.'s Rule 56.1 Statement ¶ 7) "While the definition of 'disability' under the [NYCHRL] may be broader than the definition under [federal anti-discrimination statutes], [Plaintiff] nevertheless fails to raise an issue of fact regarding whether [Defendant's] proffered reason for her termination was pretext or any alleged intentional discrimination underlying her termination." *Fall v. N.Y. United Teachers*, 289 Fed.Appx. 419, 422 (2d Cir. 2008). Defendant has "offered a legitimate, nondiscriminatory basis for [P]laintiff's termination which [P]laintiff has failed to [adequately] rebut." *Doe*, 2012 WL 763556, at *10. Defendant is, therefore, entitled to summary judgment on Plaintiff's NYCHRL claims. *Id.*

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

510

The Clerk of the Court is directed to remove Dkt. #34 from the Court's list of pending motions and to close the case.